**MEDITERRANEAN GOLF, INC. and Robert Trent Jones, Plaintiffs,**

v.

**Denyse Louppe HIRSH, Defendant.**

Civ. A. No. 91–2234 (AJL).

United States District Court,
D. New Jersey.

Nov. 27, 1991.

Vincent J. Paluzzi, Marshall D. Bilder, Hannoch Weisman, P.C., Trenton, N.J., Kenneth B. Clark, Kathryn J. Fritz, Fenwick & West, Palo Alto, Cal., for plaintiffs.

William J. O'Shaughnessy, Amy S. Winkelman, Clapp & Eisenberg, P.C., Newark, N.J., for defendant.

## OPINION

LECHNER, District Judge.

This is a breach of contract action brought by plaintiffs Mediterranean Golf, Inc. ("Mediterranean Golf") and Robert Trent Jones ("Jones") (collectively, the "Plaintiffs") against defendant Denyse Louppe Hirsh ("Hirsh"). Jurisdiction is asserted pursuant to 28 U.S.C. § 1331. Currently before the court is the motion brought by Hirsh to dismiss the complaint on the grounds of_forum non conveniens and international comity.[1] For the reasons set forth below, the motion to dismiss on the ground of forum non conveniens is granted; the motion to dismiss on the ground of international comity is moot.

*Facts*

Jones is a golf course architect who resides in Florida. Jones Dec., ¶ 2. Jones has never resided in France. *Id.* He is the Chairman, President and sole shareholder of Mediterranean Golf. *Id.* Mediterranean Golf is a Delaware corporation with its principal place of business in Florida. Davis Dec., ¶ 2. The wholly-owned subsidiary of Mediterranean Golf is S.C.I. Cascade des Maures ("SCI"). *Id.,* ¶ 3; Jones Dec. ¶ 7. SCI is a French company which owns and develops property. Hirsh Aff., ¶ 5. Jones is the Chairman and President of SCI. *Id.;* Jones Dec., ¶ 7. Mediterranean Golf was formed in 1982 for the purpose of holding the stock of SCI.[2] Hirsh Aff., ¶ 10.

SCI has an interest in a golf course project under development in Vidauban, France, located in the Provence region of southern France (the "Vidauban Project"). Jones Dec., ¶ 7. The Vidauban Project involves a plan to develop more than 1100 hectares of land in Vidauban into a resort complex of three golf courses, forty tennis courts, two artificial lakes, six luxury hotels and two hundred shops, houses and replicas of Provencale villages. Hirsh Aff., ¶ 4; Sokol Aff., ¶ 4.

Hirsh is a French citizen married to a United States citizen, Allen Hirsh ("A. Hirsh") (collectively, the "Hirshes"). Hirsh Aff., ¶ 2. Since their marriage in 1973, the

1. In support of this motion, Hirsh has submitted the following: Memorandum of Law in Support of Defendant Denyse Hirsh's Motion to Dismiss (the "Moving Brief"); Defendant Denyse Hirsh's Memorandum of Law in Reply to Plaintiffs' Opposition to Her Motion to Dismiss (the "Reply Brief"); Affidavit of Ronald P. Sokol, Esq. ("Sokol Aff."); Affidavit of Denyse Louppe Hirsh ("Hirsh Aff.") and the Supplemental Affidavit of Ronald P. Sokol, Esq. ("Supp. Sokol Aff.").

In opposition to this motion, the Plaintiffs have submitted the following: Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss (the "Opp. Brief") and Declarations in Opposition to Defendant's Motion to Dismiss, including the Declaration of Kathryn J. Fritz ("Fritz Dec."), Declaration of Robert Trent Jones ("Jones Dec."), Declaration of Alan Blake Davis ("Davis Dec.") and the Declaration of Yves Sicard ("Sicard Dec.").

2. The Plaintiffs have not contested the contention that Mediterranean Golf is a shell corporation organized for the purpose of holding the stock of SCI.

Hirshes have maintained residences at A. Hirsh's family home in Montclair, New Jersey, Hirsh's family flat in Paris and at their vineyard in Ville Croze, Provence, France. *Id.* During the past fifteen years, Hirsh has lived primarily in Ville Croze, Provence, France. *Id.*, ¶ 3. From 1973 through 1988 the Hirshes owned a vineyard outside Ville Croze. *Id.*

In 1981 at the Hirshes' Montclair residence A. Hirsh introduced Hirsh to Jones. *Id.*, ¶ 4; Jones Dec., ¶ 3. A. Hirsh and Jones had met at the Montclair Golf Club, where each of them are members. Hirsh Aff., ¶ 4. At the time they were introduced, Jones told Hirsh about the Vidauban Project. *Id.* Jones told Hirsh he had already acquired rights to purchase parcels of land necessary for the Vidauban Project. *Id.*, ¶ 5. Jones further told Hirsh of difficulties he had with respect to obtaining the necessary land use approvals from the local French authorities. *Id.* Aware that Hirsh was at that time a French citizen and a long time resident of Provence with substantial contacts among government officials and business leaders in the region, Jones asked Hirsh if she could use her familiarity with these people and institutions in the area to assist him. *Id.*, ¶¶ 2, 5. Hirsh told Jones she would try; subsequently, she obtained the required land use approvals after time and effort. *Id.*, ¶¶ 5–6.

During the following eight years, Hirsh worked in the Vidauban Project, with and without a contract of employment. In 1982 Jones asked and Hirsh agreed to become the co-Gerante of SCI with Firouz Affrouz ("Affrouz"). *Id.*, ¶ 6. A Gerante is the equivalent of a chief operating officer of a company. *Id.* Affrouz resigned his position in October 1982 at which point Hirsh became the sole Gerante. *Id.* After Affrouz' resignation, SCI had three employees, Hirsh, a secretary and Jacques Mikelian ("Mikelian"), the Project Manager. *Id.*, ¶ 8. SCI had its offices at Hirsh's vineyard in Ville Croze until the vineyard was sold in 1989. *Id.*

As Gerante of SCI Hirsh obtained and maintained the zoning approvals, prepared budgets, made and cultivated contacts with local and national French governmental authorities, worked with the various advisors and consultants for planning and engineering, negotiated fees and financing, assisted attorneys who represented Jones and attended local functions for the Vidauban Project. *Id.*, ¶ 7. These efforts required extensive travel throughout France to meet government officials, bankers and attorneys. In addition, Hirsh traveled to the United States to discuss the status of the Vidauban Project with Jones or his advisors. *Id.*, ¶ 9. Generally, Hirsh went to Florida during her trips to the United States; however, she did make some trips to New York and New Jersey. *Id.* During some of her visits to the United States Hirsh would entertain French contacts. *Id.*

From 1982 until 1987 Hirsh worked as Gerante of SCI without a contract. She entered her first contract with respect to her work for the Vidauban Project in 1987. *Id.*, ¶ 11. At that time, Hirsh entered two contracts concerning her employment: the first was a five year employment contract between Hirsh and SCI; the second was a contract between Hirsh and Jones. *Id.* Under the second contract, Jones personally and unconditionally guaranteed all sums due and payable to Hirsh under the contract with SCI. *Id.* Both of these contracts were renegotiated in 1989. The renegotiations resulted in the "Amended and Restated Employment Agreement" with SCI (the "SCI Contract") and an Employment Agreement with Mediterranean Golf (the "Mediterranean Golf Contract"). *Id.*, ¶ 12, Ex. D. Under both of these contracts, Hirsh's employment was extended to 31 December 1993. *Id.*, ¶ 13.

The SCI Contract provided that Hirsh would be compensated in French francs and that French law would apply. *Id.*, ¶ 13, Ex. C, Art. III. The Mediterranean Golf Contract provided that Hirsh's compensation would be paid in a "combination of United States dollars and French Francs [sic] exchanged for United States dollars." *Id.*, ¶ 13. The choice of law clause under the Mediterranean Golf Contract provided for the application of New York law. *Id.*, Ex. D, Art. IV. The Mediterranean Golf

Contract provided that SCI would pay Hirsh for twelve months the employment compensation due thereunder in the event it was terminated pursuant to the termination provision. *Id.*, Ex. D at Art. II, § 2.1(e). In addition, both the SCI Contract and the Mediterrean Golf Contract had an unconditional and personal guaranty of Jones guarantying the payment of all sums due to Hirsh as well as a provision for payment in the event of a termination of either agreement. *Id.*

The Mediterranean Golf Contract was negotiated on behalf of Mediterranean Golf by Frank Weller, Esq. ("Weller"), a Maryland attorney. Jones Dec., ¶ 5. Hirsh was represented by Cole & Dietz, a New York City law firm. *Id.* Hirsh's Montclair, New Jersey address is given as her residence on the Mediterranean Golf Contract. *Id.*

Although Hirsh's duties as Gerante did not change after the execution of the SCI Contract and Mediterranean Golf Contract, her duties were set forth thereunder. Under the SCI Contract, Hirsh was required to serve as Gerante of the SCI and continue preparations of the master plan for the Vidauban Project. Hirsh Aff., ¶ 14. Jones states that the SCI Contract dealt exclusively with Hirsh's services relating to the Vidauban Project. Jones Dec., ¶ 7.

The Mediterranean Golf Contract required Hirsh to " 'develop and implement marketing and public relations programs for [Mediterranean Golf] for the purpose of promoting the 'Robert Trent Jones' name and the business activities and goodwill of all businesses controlled by [Jones]....' " Mediterranean Golf Contract, 1. At oral argument, counsel for Plaintiffs contended the Mediterranean Golf Contract implicitly required Hirsh to travel around the world to fulfill her duty to promote the Robert Trent Jones name. However, there is no language in the Mediterranean Golf Contract which supports that contention. Moreover, Plaintiffs have not submitted an affidavit or other documentation to support that contention. The Mediterranean Golf Contract also prohibited Hirsh from accepting employment by any company other than those companies owned by Jones. *Id.*, 2.

Hirsh states that in fulfilling her obligations under the Mediterranean Golf Contract she was never required to work for any of Jones' other companies other than SCI. Hirsh Aff., ¶ 14. The Plaintiffs state throughout Hirsh's employment under the Mediterranean Golf Contract she was in "regular communication" with Jones or his advisors who were located in the United States. Fritz Dec., ¶ 4, Ex. 4. Alan Blake Davis, Chief Operating Officer and Vice President of Mediterranean Golf ("Davis"), states he had extensive meetings with Hirsh in the United States. Davis Dec., ¶ 3.

In 1990 Jones hired a team of advisors to review his domestic and international operations. Jones Dec., ¶ 6. Davis was one of the people hired for that purpose. Davis Dec., ¶ 3. In April 1990 Hirsh attended a meeting in Florida where she was advised that her salary was being reduced because of financial difficulties of Jones and his companies. Hirsh Aff., ¶ 18. In June 1990 Hirsh attended a meeting in Paris at which Hirsh was requested to give a presentation on the Vidauban Project with only two hours' notice. *Id.*

Jones states that he realized, as a result of the above-mentioned review, there was little to no promotion of his name as required under the Mediterranean Golf Contract. Jones Dec., ¶ 6. Davis states he, on behalf of Jones, sent to Hirsh a letter, in October 1990, terminating her as Gerante under the SCI Contract; in November 1990 he sent Hirsh a letter of termination of the Mediterranean Golf Contract. Davis Dec., ¶ 4.

On 18 December 1990 Hirsh filed a petition with the Tribunal de Grande Instance (the "Court of General Jurisdiction") in Draguignan, France seeking authorization to place a temporary judicial lien on the Vidauban Project's real estate (the "Vidauban Property"). Sokol Aff., ¶ 5(a). Hirsh sought the temporary judicial lien in order to secure a potential judgment arising out of breach of contract claims against Jones, Mediterranean Golf and SCI. Sokol Aff.,

¶ 5. On 20 December 1990 the Court of General Jurisdiction granted Hirsh's petition for a temporary judicial lien on the Vidauban Property (the "20 December Order"). *Id.*, ¶ 5(b). The 20 December Order further provided that Hirsh must file a claim on the merits within two months with the court of proper jurisdiction. *Id.*

On 8 February 1991 Hirsh filed a complaint against Jones, Mediterranean Golf and SCI in the Conseil de Prud'hommes (the "Labor Court") located in Draguignan (the "French Action"). *Id.*, ¶ 5(c). The Labor Court has jurisdiction over disputes between an employer and an employee.[3] *Id.*, ¶ 6; Sicard Dec., ¶ 5. The French Action is a breach of contract claim based on the allegation that Jones, SCI and Mediterranean Golf did not honor their contractual obligations under the SCI Contract and the Mediterranean Golf Contract. Hirsh Aff., ¶¶ 21–22; Sicard Dec., ¶ 2.

On 13 March 1991 Jones brought a special proceeding in the Court of General Jurisdiction seeking an annulment of the temporary judicial lien and challenging the Labor Court's jurisdiction. Sokol Aff., ¶ 5(d), Ex. G. Jones argued the Labor Court was without jurisdiction to adjudicate his liability under the personal guaranty in the SCI Contract and Mediterranean Golf Contract. *Id.* In addition, Jones, Mediterranean Golf and SCI contested jurisdiction on the ground that Hirsh is an independent contractor, not an employee. Sicard Dec., ¶ 5.

On 10 April 1991 the Court of General Jurisdiction denied Jones' request to annul the temporary judicial lien. Sokol Aff., ¶ 5, Ex. H. In addition, the Court of General Jurisdiction held that only the Labor Court could hear Jones' jurisdictional challenge. *Id.* On 28 May 1991 a settlement conference was held by the Labor Court; settle-ment was not reached. *Id.* The jurisdictional challenge and the merits of the French Action were scheduled to be heard on 29 October 1991. *Id.*, ¶ 5; Sicard Dec., ¶ 3. To date, this court has not been advised of any decision.

On 4 May 1991 the Plaintiffs instituted this action against Hirsh.[4] Fritz Dec., ¶ 2, Ex. 1 (the "Complaint"). The Complaint does not refer to the SCI contract. Count One of the Complaint asserts a claim for breach of fiduciary duty arising under the Mediterranean Golf Contract. Complaint, ¶¶ 7–8. The allegations of the Complaint state Hirsh failed to perform and refused to cooperate with the Plaintiffs, failed to adequately maintain records and supervise personnel and expenses and failed to disclose information regarding businesses in which Jones has an interest. *Id.*, ¶ 9. In addition, Count One alleges Hirsh intentionally used corporate funds of Jones-owned businesses for personal use without recording the same. *Id.*, ¶ 10. The only explicit allegations in the Complaint concerning misappropriation of corporate funds are about funds of SCI. *Id.*, ¶ 26.

Count Two of the Complaint asserts a claim for breach of contract and seeks rescission of the Mediterranean Golf Contract. *Id.*, ¶¶ 12–18. The Complaint alleges that Hirsh failed to perform her duties under the Mediterranean Golf Contract and that Mediterranean Golf suffered damages as a result. *Id.* Count Three is also for breach of the Mediterranean Golf Contract and seeks damages in an amount to be determined at trial. *Id.*, ¶¶ 19–20. Count Four of the Complaint alleges Hirsh received benefits far in excess of the benefits conferred upon Mediterranean Golf. *Id.*, ¶¶ 21–23. Count Five of the Complaint is for fraud on the ground that Hirsh intentionally failed to disclose information to

---

**3.** Decisions of the Labor Court are appealable to the Cours d'appel (the "Court of Appeals"). Sokol Aff., ¶ 6; Sicard Dec., ¶ 6. The Chambre Sociale is a division of the Court of Appeals which hears appeals from the Labor Court. Appeals to the Chambre Sociale are heard under a *de novo* standard of review. *Id.* An appeal from the Chambre Sociale can be made to the Cour de Cassation, the highest French court. *Id.;* Sokol Aff., ¶ 6. Appeals to the highest court are made on ground of an error of law. *Id.;* Sicard Dec., ¶ 6.

**4.** Hirsh was served a copy of the summons and Complaint at her Montclair, New Jersey residence. Fritz Dec., ¶ 2. Hirsh has declared her tax domicile to be in the United States. *Id.*, ¶ 3, Ex. 3.

Mediterranean Golf and Jones with respect to her work under the Mediterranean Golf Contract. *Id.*, ¶¶ 24–30.

*Discussion*

Hirsh argues the appropriate place for trial in this matter is France. Hirsh seeks to dismiss the action on the ground of *forum non conveniens* because the subject matter of the dispute took place in France, the relevant witnesses and documents are located in France and there is an ongoing related action in France, the French Action. Moving Brief, 8–21; Reply Brief, 5–14. In addition, Hirsh argues the Complaint should be dismissed in the interest of international comity. *Id.*, 21–22.

A. Forum Non Conveniens

■■■ The doctrine of *forum non conveniens* permits a court to deny hearing a case despite the existence of jurisdiction out of consideration for the interests of the litigants and in the interest of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The analysis under a motion to dismiss for *forum non conveniens* is flexible and must be made on the unique facts of each case. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249–50, 102 S.Ct. 252, 262–63, 70 L.Ed.2d 419 (1981), *reh'g denied*, 455 U.S. 928, 102 S.Ct. 1296, 71 L.Ed.2d 474 (1982). A determination of *forum non conveniens* " 'represent[s] exercise[ ] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and to the court should a particular action be litigated in one forum rather than another.' " *Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir.1989) (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 781 (D.C.Cir.1980), *cert. denied*, 454 U.S. 1128, 102 S.Ct. 980, 71 L.Ed.2d 116 (1981)) [hereinafter *Lony I*]; *see also Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 178 (3d Cir.1991) [hereinafter *Lacey II*]; *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 43 (3d Cir.1988) [hereinafter *Lacey I*]. Added to that are the "interests of justice" and the impact on judicial administration of maintaining related actions in separate fora. *Koster v. (American) Lum-*

*bermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 833, 91 L.Ed. 1067 (1947).

■ Of paramount interest in a *forum non conveniens* analysis is whether "trial in the chosen forum would 'establish ... *oppressiveness* and *vexation* to a defendant ... out of all proportion to plaintiff's convenience,' or when the 'chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.' " *Piper*, 454 U.S. at 241, 102 S.Ct. at 258 (quoting *Koster*, 330 U.S. at 524, 67 S.Ct. at 831–32) (emphasis added); *see also Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 608 (3d Cir.1991) [hereinafter *Lony II*]. The initial inquiry for a district court deciding a *forum non conveniens* motion is whether there is an alternate adequate forum to hear the case. *Lacey I*, 862 F.2d at 43.

■ If an adequate alternative forum exists, the district court must consider the various factors set forth by the Supreme Court in *Gulf Oil*, 330 U.S. at 508–09, 67 S.Ct. at 843; *see also Lony I*, 886 F.2d at 632–33. These factors fall into two broad categories. One category includes factors relating to the so-called "private interests" of the parties in the context of the litigation: the plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing witnesses, obstacles to a fair trial and the possibility of a jury view of the premises. *Gulf Oil*, 330 U.S. at 508, 67 S.Ct. at 843.

The other category consists of the "public interest" in the administration of courts and the adjudication of cases: court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home and familiarity of the forum court with the applicable law. *Id.* at 508–09, 67 S.Ct. at 843.

■ The moving party has the burden of persuasion on a motion to dismiss for *forum non conveniens*, *Lony I*, 886 F.2d at 633; *Lacey I*, 862 F.2d at 44, which must

establish "a strong preponderance in favor of dismissal." *Lacey, II*, 932 F.2d at 179. The burden is not on the nonmoving party to show that the proposed alternative forum is inadequate. On the contrary, the burden is on the moving party to show the proposed alternative forum is not only adequate but also more convenient than the present forum. *Lacey I*, 862 F.2d at 43–44.

In making its decision, a "district court is required to develop adequate facts to support its decision and to articulate specific reasons for its conclusion" that another forum is appropriate. *Id.*, at 39. Among the considerations are whether the moving party submitted adequate data of record to facilitate the appropriate analysis, whether the moving party has met its burden of persuasion, whether the contentions of the plaintiff were adequately considered and whether the relevant private and public interests were both adequately considered and balanced. *Id.*

#### 1. *Adequate Alternative Forum*

■ The alternative forum proposed by Hirsh is France. Moving Brief, 9–10. The Plaintiffs argue, however, France is not an adequate alternative forum. Opp.Brief, 9. The Plaintiffs rely on their pending jurisdictional challenge in the French Action. *Id.* The jurisdictional challenge attacks the jurisdiction of the Labor Court concerning the French Action; it does not challenge the fact that another French court or the Court of General Jurisdiction could not hear the French Action or indeed this action.

In considering this motion, the focus is not on whether Plaintiffs "would be unduly inconvenienced by its dismissing the case, [but] rather . . . on whether [Hirsh] would be unduly burdened and oppressed by . . . retaining jurisdiction in the United States."

*Lony I*, 886 F.2d at 640. To focus otherwise would "shift the burden of persuasion from [Hirsh] to the [P]laintiff[s]." *Id.*

In *Piper*, the court noted an adequate alternative forum exists if the "defendant is 'amenable to process' in the other jurisdiction." 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22 (quoting *Gulf Oil*, 330 U.S. at 506–07, 67 S.Ct. at 842)); *see also Lony I*, 886 F.2d at 633. The Supreme Court has carved out an exception to this rule if the alternative forum does not provide an adequate remedy for the claims asserted. *Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. at 265 n. 22.

In this case, the Plaintiffs challenge the adequacy of France as the alternative forum because of their jurisdictional challenge pending in the French Action. Opp. Brief, 9. The Plaintiffs do not contest whether they are "amenable to process" in France. Indeed, Plaintiffs concede they are.[5] *Id.*, 6 n. 5. Nor do Plaintiffs suggest that French law fails to provide an adequate remedy for the claims they assert in the Complaint. Apparently, French law does permit recovery for claims based in fraud, breach of fiduciary duty and breach of contract.[6] Supp. Sokol Aff., ¶¶ 9–11. Because the Plaintiffs, as well as Hirsh, are amenable to process in France and an adequate legal remedy appears to exist, France is an adequate alternative forum for this action.

Having concluded that France is an appropriate forum in which this case may be heard and having noted the burden is on the moving party to show a strong reason exists to dismiss a case for *forum non conveniens*, the deference due to the Plaintiffs' choice of forum and the private and public interests must be considered.

---

**5.** Plaintiffs state: "Simply because [Mediterranean Golf] and Jones *can be sued in France* does not mean that they should be forced to sue Hirsh in France." Opp.Brief, 6 n. 5 (emphasis added).

**6.** French law apparently has a cause of action for "deloyaute" or disloyalty on the part of employees or agents which appears to be the equivalent to a common law action for breach of

fiduciary duty. Supp. Sokol Aff., ¶ 9. In addition, it appears French law has a very broad statutory basis for tort liability. *Id.*, ¶ 10 (citing French Civil Code, Articles 1382–1384). French law also permits the release of a party from his, her or its obligations under a contract and permits a party to recover costs when the contract has been breached by the other party. *Id.*, ¶ 13.

## 2. Deference Due to Plaintiffs' Choice of Forum

 It is well established that a plaintiff's choice of forum is presumptively correct. *Piper,* 454 U.S. at 255, 102 S.Ct. at 265; *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843); *Lacey I,* 862 F.2d at 45. It is equally as established, however, that a plaintiff's choice of forum is afforded less deference when the plaintiff has chosen a foreign forum. *Piper,* 454 U.S. at 255–56 n. 23, 102 S.Ct. at 265–66 n. 23; *see e.g., AT & T Co. v. MCI Communications Corp.,* 736 F.Supp. 1294, 1306 (D.N.J.1990) (discussing deference due plaintiff's choice of forum in motion to transfer pursuant to 28 U.S.C. § 1404); *Sandvik, Inc. v. Continental Ins. Co.,* 724 F.Supp. 303, 307 (D.N.J. 1989) (same). *Cf. Lony II,* 935 F.2d at 609 (according less deference does not mean no deference is given to foreign plaintiff's choice of forum) (citing *Lacey I,* 862 F.2d at 45–46). The Third Circuit has stated "the reason for giving a foreign plaintiff's choice less deference is not xenophobia, but merely a reluctance to assume that the choice is a convenient one ..." *Lony I,* 886 F.2d at 634.

In this case, Mediterranean Golf is a Delaware corporation with its principal place of business in Florida and Jones is a resident of Florida. Therefore, New Jersey is a foreign forum to the Plaintiffs. Accordingly, the Plaintiffs' choice of forum is entitled to less deference and the Plaintiffs must make more of a showing of convenience to be accorded the same treatment as a home state plaintiff. *Lacey II,* 932 F.2d at 179 (citing *Lony I,* 886 F.2d at 634). This does not mean, however, the burden of persuasion is shifted; on the contrary, it remains Hirsh's burden to show by a strong preponderance the convenience of the alternative forum.

## 3. Private Interests

 The primary private interests in this case are the convenience of the available courts concerning the witnesses and documentary evidence of both parties, the ease of access to sources of proof and the availability of compulsory process over unwilling witnesses.

### a. Access to Witnesses

The first relevant factor under the private interest analysis is the convenience of the available fora concerning the witnesses of both parties. As the Supreme Court stated:

> To examine "the relative ease of access to sources of proof," and the availability of witnesses, the district court must scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action.

*Van Cauwenberghe v. Biard,* 486 U.S. 517, 528, 108 S.Ct. 1945, 1953, 100 L.Ed.2d 517 (1988) (quoting *Gulf Oil,* 330 U.S. at 508, 67 S.Ct. at 843). As indicated by the Third Circuit, the district court must consider the " 'relative ease of access to sources of proof' in each forum." *Lacey I,* 862 F.2d at 46.

In this case, the parties dispute the nature of the relevant proof and who the relevant witnesses are. The Plaintiffs characterize the dispute as one involving the negotiations concerning the Mediterranean Golf Contract and performance of Hirsh's duties under it. Opp.Brief, 10–11. Hirsh agrees the dispute concerns her performance under the Mediterranean Golf Contract; however, she argues the allegations of the Complaint involve conduct done in France. Moving Brief, 11–13; Reply Brief, 5–6. Each party illustrates the dispute by offering a list of potential witnesses who are located in either France or the United States.

The Plaintiffs' list of potential witnesses includes primarily attorneys and advisors who reside in either Maryland, Florida, California or Texas.[7] The testimony the Plain-

---

7. The list of Plaintiffs' potential witnesses includes: Allen Zink, an attorney and business associate of Jones appointed as one of the team of advisors to review Jones' domestic and international affairs; Tina Jaillet, Hirsh's former secretary during the Mediterranean Golf Contract;

tiffs intend to proffer through these witnesses consists of evidence concerning the "negotiations regarding the [Mediterranean Golf Contract] and Hirsh's performance, or non-performance, thereunder...." Jones Dec., ¶ 9.

Hirsh's list of potential witnesses includes an engineer, attorneys, an advisor to the Vidauban Project and an accountant for SCI, both of whom reside in France.[8] Hirsh Aff., ¶ 25. All of the potential witnesses contained in Hirsh's list reside in France. *Id.* The testimony Hirsh seeks to elicit from these witnesses appears to relate to the time and effort Hirsh expended on the Vidauban Project, as well as expenses charged to SCI. *Id.* Hirsh states she is unaware of any witnesses she would call in this action who reside in the United States. *Id.*

Although the assessment of a *forum non conveniens* motion "does not call for a detailed development of the entire case," *Lacey I*, 862 F.2d at 45, a brief review of the issues is necessary to determine who the critical witnesses are. The substance of the Complaint involves Hirsh's cooperation with Mediterranean Golf, her maintenance of records regarding her performance of duties under the Mediterranean Golf Contract, her performance under the Mediterranean Golf Contract, her entertainment and travel expenses charged to SCI and her representations or lack thereof to Jones and Mediterranean Golf regarding her efforts under the Mediterranean Golf Contract.[9] Complaint, ¶¶ 9–10, 15, 25–26.

With regard to allegations Hirsh misused corporate funds of "companies owned directly or indirectly by [Robert Trent] Jones," the only company funds explicitly cited in the Complaint are those of SCI. Complaint, ¶ 25. The Complaint states that *"during 1988* and 1989 [Hirsh] *charged to ... SCI, ...,* more than *$100,000 for taxicabs purportedly used in France." Id.* at ¶ 25(b) (emphasis added). This allegation, concerning SCI funds and expenses incurred in France, highlights the efforts and conduct of Hirsh in France. It also underscores Hirsh's employment relationship with SCI and her pre-Mediterranean Golf Contract conduct because the Hirsh employment agreement with Mediterranean Golf was not reduced to a writing until January 1989. To contest her expenses charged to SCI, Hirsh has indicated she will rely upon Milcot, SCI's French accountant who lives and practices in France. Hirsh Aff., ¶ 5(e). Apparently, Milcot reviewed all expenses charged by Hirsh to SCI after January 1989 and either made or reviewed the allocations of these expenses between SCI and Hirsh personally. *Id.*

Other aspects of the Complaint, when examined, reveal the essence of the dispute centers around Hirsh's performance in the Vidauban Project. The First Count of the Complaint asserts Hirsh failed "to adequately maintain records and supervise personnel and expenses...." Complaint, ¶ 9(b). It appears Mediterranean Golf "has never generated revenues from the conduct of business." Reply Brief, Ex. A, answer to interrogatory no. 1. In light of this fact, it is difficult to understand how Hirsh failed "to adequately maintain records and supervise personnel and expenses" of a

---

Robert Trent Jones, Jr., Jones' son and advisor of Jones; Jeremy Slessor, the supervisor of Jones' oversees companies, including the Vidauban Project and Russell Carlisle ("Carlisle"), an attorney for Mediterranean Golf and Jones. Jones Dec., ¶ 9. Of these five potential witnesses, none of them reside in New Jersey.

In addition, the Opp.Brief indicates an intent to bring as witnesses attorneys from Cole & Dietz, the law firm retained by Hirsh to negotiate the Mediterranean Golf Contract and Weller, the attorney who represented Mediterranean Golf during the negotiations of the Mediterranean Golf Contract. Opp.Brief, 11.

**8.** Specifically, Hirsh names as potential witnesses: Girard Audas, a public works engineer and

advisor to SCI; Hubert Gasnos, an attorney retained on behalf of SCI for problems relating to zoning; Mikelian, an architect, public works engineer and project manager to the Vidauban Project; Michel Puisais–Jauvin, an attorney retained on behalf of SCI regarding legal and corporate affairs; and Andre Milcot, an accountant for SCI ("Milcot"). Hirsh Aff., ¶ 25.

**9.** To the extent these claims are for conduct before 1989, they are asserted by Jones and SCI only. Hirsh did not have a relationship with Mediterranean Golf until she entered the Mediterranean Golf Contract in 1989.

shell corporation which exists only as "a vehicle for generating goodwill and promoting [the Robert Trent] Jones name...." *Id.*

A review of the submissions demonstrates what Hirsh argues: this suit centers on her performance in France as Gerante of SCI. It appears the records, personnel and expenses at issue concern those of SCI, the company for which Hirsh worked under both the SCI and the Mediterranean Golf Contracts. This conclusion is further buttressed by a review of the Fifth Count of the Complaint which charges Hirsh failed to disclose that "from at least *1986* through 1990 she did not keep or complete in the United States or *France* adequate records of the purposes of expenses...." Complaint, ¶ 25(a) (emphasis added). As mentioned, the Mediterranean Golf Contract was not executed until January 1989. Clearly, it is Hirsh's performance in France under the SCI Contract which is at issue.

As previously stated, under the Mediterranean Golf Contract, Hirsh agreed to "develop and implement marketing and public relations programs for [Mediterranean Golf] for the purpose of promoting the 'Robert Trent Jones' name and the business activities and good will of all businesses controlled by [Jones]." Mediterranean Golf Contract, 1. Although the Mediterranean Golf Contract and the SCI Contract set forth separate obligations, they are related. The Mediterranean Golf Contract precluded Hirsh from accepting "gainful employment, except in an advisory capacity, with any person" except from Mediterranean Golf, SCI or Jones. *Id.*, 2. Moreover, as a result of the SCI Contract, Hirsh was required to live in France where she could perform her obligations as Gerante of SCI. Hirsh was obligated under the SCI Contract until 1993. *Id.*, 3. Hirsh's work under the SCI Contract required her to oversee SCI's development of the Vidauban

Project—the first golf resort complex in Europe.

In light of the size and magnitude of the Vidauban Project, it was in the interest of the Plaintiffs to have the name Robert Trent Jones promoted in France. Indeed, the Mediterranean Golf Contract would not exist but for the Vidauban Project. Accordingly, it appears Hirsh's obligations under the Mediterranean Golf Contract were to be performed primarily in France. In light of this, Plaintiffs' argument that Hirsh's performance under the Mediterranean Golf Contract was "not at all restricted to France" is weak and has little persuasive value. The Plaintiffs have neither pointed to contractual language requiring Hirsh to travel around the world to promote the Robert Trent Jones name nor explained how Hirsh would be able to travel around the world when she was obligated under the SCI Contract to serve as Gerante in France until 1993.

Given the interrelationship between the Vidauban Project and Hirsh's duty to promote and market the Robert Trent Jones name, it is necessary to carefully examine Hirsh's activities to determine under which contract the conduct was performed.[10] Necessarily, to determine the adequacy of Hirsh's performance under the Mediterranean Golf Contract, the persons with whom Hirsh worked on the Vidauban Project will be important witnesses. Their testimony may directly bear upon whether Hirsh worked only on developing the Vidauban Project or whether at the same time she promoted the Robert Trent Jones name.

In addition, the Plaintiffs' emphasis on the need to have the attorneys who negotiated the Mediterranean Golf Contract testify as to the duties and obligations of Hirsh is without merit.[11] Although a *forum non conveniens* analysis does not require a district court to entangle itself in the merits of the case, it must "delineate the likely contours of the case by ascertaining ...

---

10. The interrelatedness of the two contracts is further evidenced by the fact that the Mediterranean Golf Contract provides for SCI to pay Hirsh full annual compensation in the event of termination of the Mediterranean Golf Contract. Mediterranean Golf Contract, Art. II.

11. The issue concerning the construction of the Mediterranean Golf Contract is raised not in the Complaint but in the Opp.Brief at 3 n. 3.

the nature of the plaintiff's action, the existence of any potential defenses, and the essential sources of proof." *Lacey II,* 932 F.2d at 181.

It appears from the face of the Mediterranean Golf Contract that it is an integrated and unambiguous contract. The evidence regarding the negotiations and interpretation of the Mediterranean Golf Contract appears to be extrinsic evidence which would be inadmissible given the clarity of the contract language.[12] Accordingly, it is doubtful the witnesses who would testify about the negotiations, execution and interpretation of the Mediterranean Golf Contract will be essential, if at all necessary or permissible, to the Plaintiffs' case.

Hirsh, moreover, does not contest her obligations and duties imposed under the Mediterranean Golf Contract. At issue, rather, is whether Hirsh performed her duties under the Mediterranean Golf Contract. Accordingly, it appears the attorneys who negotiated the terms of the Mediterranean Golf Contract could offer little or no testimony with respect to Hirsh's performance. Therefore, the essential witnesses to this case are those witnesses with actual knowledge of Hirsh's performance.

The lists of witnesses can be categorized into two groups, those witnesses who work or worked for Mediterranean Golf and those witnesses who Hirsh claims have first hand knowledge of her conduct in France under the Mediterranean Golf Contract and SCI Contract. With respect to the breach of contract, fraud and breach of fiduciary duty claims, Hirsh's defense rests on the availability of the later category of witnesses. Not only do they have knowledge as to the extent of Hirsh's performance, but the accountant can testify as to Hirsh's expenses. Hirsh has also indicated she may introduce an expert to testify with respect to the value and cost of services in France. Moving Brief, 13.

A most important difference concerning Plaintiffs' witnesses and those of Hirsh is that numerous critical witnesses in France outside of either Hirsh's or Plaintiffs' control will not be available for trial in the United States. See *Lony I,* 886 F.2d at 640. Hirsh will not have access to these critical witnesses because they are not within her control and are outside the court's compulsory process. Moving Brief, 13–14. The majority of the witnesses the Plaintiffs intend to call are in Mediterranean Golf's control and would be available to them for trial in France. Reply Brief, 10. *Cf., Lacey II,* 932 F.2d at 183 (where witnesses were no longer employed by defendants and not in their control, plaintiff was burdened by having trial in British Columbia outside reach of compulsory process). The only witness no longer in the Plaintiffs' control is Hirsh's former secretary who apparently no longer works for SCI or Mediterranean Golf. The Plaintiffs, however, have not described the nature of the testimony she could offer or whether she is

**12.** Assuming the New York choice of law clause is given effect, New York principles of parole evidence will apply. Under New York law "where the language of a contract is 'susceptible of at least two fairly reasonable meanings, the parties have a right to present extrinsic evidence.'" *Orix Credit Alliance, Inc. v. Quail Hollow Mining, Co.,* 1991 WL 12414, *2, 1991 U.S. Dist. LEXIS 810, *5 (S.D.N.Y. 24 Jan. 1991) (quoting *Schering Corp. v. Home Ins. Co.,* 712 F.2d 4, 9 (2d Cir.1983)); *see also Bacchus Assoc. v. Hartford Fire Ins. Co.,* 766 F.Supp. 104, 110 (S.D.N.Y.1991); *Sendar Co. v. Megaware Inc.,* 1988 WL 31873, *6, 1988 U.S. Dist. LEXIS 2235, *6 (S.D.N.Y.1988) (cannot offer prior oral statements to alter meaning of unambiguous terms of integrated contract). Essential to this analysis is a showing that the contract is ambiguous on its face. *Kabushiki Kaisha Hattori Seiko v.*

*Refac Technology Dev. Corp.,* 690 F.Supp. 1339, 1343 (S.D.N.Y.1988). "The question of whether a term is clear or ambiguous is ... a question of law." *Air Master Sales Co. v. Northbridge Park Co-op, Inc.,* 748 F.Supp. 1110, 1114 (D.N.J.1990) (citing *Tigg Corp. v. Dow Corning Corp.,* 822 F.2d 358, 362 (3d Cir.1986)); *see also Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.,* 930 F.2d 1021, 1026 (2d Cir.1991); *AML Int'l Ltd. v. Orion Pictures Corp.,* 1991 WL 120323, *1 1991 U.S. Dist. LEXIS 8452, *4 (S.D.N.Y. 24 June 1991); *Armco, Inc. v. Glenfed Fin. Corp.,* 746 F.Supp. 1249, 1251 (D.N.J.1990). In this case, the language setting forth Hirsh's duties appears to be unambiguous. Given the integrated nature of the Mediterranean Golf Contract, it appears to contain all information intended to be set forth in it.

unavailable to them.[13] Therefore, it is not possible to determine whether her testimony is relevant and whether her absence is a burden on the Plaintiffs.

Even assuming Hirsh's witnesses voluntarily come to the United States, Hirsh will have the additional burden of providing translators for the witnesses. Hirsh states that "most if not all of the witnesses with information" are French speaking.[14] Hirsh Aff., ¶ 25. "[T]he need to translate the testimony of a witness is a relevant concern." *Lony I*, 886 F.2d at 639. As indicated in *Lacey II* and *Lony II* the burdens imposed on a party's access to proof in a foreign forum are accorded substantial weight when "dismissal would be fatal to plaintiff's cause of action." *Lacey II*, 932 F.2d at 190; *accord, Lony II*, 935 F.2d at 612.

In this case, there is a significant burden of access to witnesses imposed on Hirsh if the United States is the forum; however, there is very little burden of access to witnesses imposed on the Plaintiffs if the forum is France. As previously mentioned, the Plaintiffs' witnesses are available in France, with a possible burden of translating their testimony. As stated, the testimony of the Plaintiffs witnesses, as listed, is not as important or relevant as the testimony of Hirsh's witnesses. Therefore, the burden of translating the testimony of the Plaintiffs' witnesses is not as great. This factor weighs significantly in favor of dismissal because maintenance of this suit in this court is very likely to place Hirsh at a gross disadvantage. Cf. *Lony II*, 935 F.2d at 615.

### b. Access to Documents

As stated by the Third Circuit, a district court need not

> pinpoint specific pieces of evidence, measure their probative value, and then determine their availability at trial.... Rather, the court simply must identify generically what sources of proof are

likely to be critical to [the plaintiff's] cause of action and then ascertain whether [the plaintiff] will enjoy access to those sources of proof at trial if his claim is litigated in [the alternative forum].

*Lacey II*, 932 F.2d at 184; *see also Lony I*, 886 F.2d at 636 ("district court is entitled to determine whether the evidence offered by the parties is 'critical, or even relevant' to prove or defend claims").

The "access to proof" factor means the "relative ease of access to sources of proof." *Gulf*, 330 U.S. at 508, 67 S.Ct. at 843. "Implicit in this phraseology is that the plaintiff could, if necessary, gain access to essential sources of proof in *either* forum." *Lacey II*, 932 F.2d at 186. Accordingly, a district court must be attuned to potential barriers to access to sources of proof. *Id.*

In *Lacey I*, the district court found the relevant evidence to be located in Canada or Australia. 862 F.2d at 46. The Third Circuit held the district court's conclusion was flawed because it did not consider the relative ease of access to sources of proof in *each* forum. *Id.* The Third Circuit further held because the critical issue was product liability of the aircraft exhaust system and the manufacturing plant was in Pennsylvania, the plaintiff would have easier access to critical evidence in Pennsylvania than in British Columbia. *Id.*, at 47.

In *Lacey II*, the Third Circuit revisited the issues in *Lacey I* after the district court dismissed the complaint for *forum non conveniens* the second time. The district court in *Lacey II* noted the motivation for the dismissal was to allow the British Columbia court to deal with the products liability action and the contribution or indemnification actions at the same time. 932 F.2d at 183. To achieve this result, the district court imposed a condition on the dismissal requiring the defendants to provide all relevant evidence in their control

---

**13.** Jones merely states that he *"believes* [Tina Jaillet] would have knowledge regarding Hirsh's various activities...."* Jones Dec., ¶ 9 (emphasis added).

**14.** Plaintiffs' contention that the "key" witnesses, as well as Hirsh, are fluent in English appears to be a reference to the witnesses the Plaintiffs seek to offer, not that the witnesses Hirsh proposes to present are fluent in English. *See* Opp.Brief, 16.

for the British Columbian action. *Id.* The Third Circuit noted, however, this requirement did not remove the barriers to plaintiff's access to many sources of proof because the defendant was no longer in the business of manufacturing aircraft exhaust systems and had transferred all of its documents to the purchaser of its business. *Id.* Additionally, the particular exhaust system in question had been redesigned. *Id.* Therefore, neither the documents nor the exhaust system would be accessible to plaintiff in British Columbia. *Id.*

In *Lony II* the district court dismissed the complaint for *forum non conveniens* after the defendant stipulated that the use of one chemical in the manufacture of the cellophane at issue would result in small amounts of another chemical in the cellophane. 935 F.2d at 610. The presence of the second chemical gave rise to the litigation in *Lony I* and *Lony II.* The Third Circuit noted, however, the defendant's stipulation did not eliminate the issue of the defendant's liability. *Id.* Because the evidence crucial to the defendant's defense remained in the United States, the Third Circuit in *Lony II* held the access to sources of proof factor did not weigh in favor of dismissing the action for *forum non conveniens. Id.,* at 611.

Hirsh argues all of the relevant documentation regarding her performance under the Mediterranean Golf Contract is in France where she claims to have performed her obligations. Moving Brief, 12. The evidence the Plaintiffs intend to introduce at trial includes the books and records of Mediterranean Golf, Jones' documents, Cole & Dietz' files on the negotiation and execution of the Mediterranean Golf Contract, Carlisle's files, documents relating to the Vidauban Project which are maintained in the United States, Hirsh's New Jersey bank account records and Weller's files, if any exist, which relate to this case. Opp. Brief, 14. The Plaintiffs contend the critical documents in the United States are those relating to the negotiation, execution and interpretation of the Mediterranean

Golf Contract. *Id.* The Plaintiffs state they will produce any relevant SCI documents at their expense in the United States. *Id.*

As previously stated, the critical issues in this dispute are Hirsh's performance under the Mediterranean Golf Contract, her maintenance of records and the validity of the expenses charged to SCI. Complaint, ¶¶ 9–10, 15, 25–26. As also mentioned, the drafts and notes regarding the negotiation, execution and interpretation under the Mediterranean Golf Contract have little relevance to Hirsh's performance under the Mediterranean Golf Contract. Moreover, drafts and notes of the Mediterranean Golf Contract may well be precluded under the parol evidence rule. *See supra,* at pp. 844–845 n. 12.

Hirsh's New Jersey bank account records are also of little relevance to the issues in dispute because her payment under the Mediterranean Contract is not at issue in this dispute. *See infra,* at p. 850. The question is whether Hirsh performed her obligations entitling her to such payment. Accordingly, as the case presently appears, the documents necessary to prove these issues are any records Hirsh may have made regarding her entertainment and travel expenses, documents regarding conversations Hirsh had with Mediterranean Golf employees or advisors, documents concerning the Vidauban Project, documents Jones may have regarding Hirsh's performance and any documents Hirsh may have compiled regarding her performance under the Mediterranean Golf Contract.

The Plaintiffs concede the documents pertaining to the Vidauban Project are located at SCI in France.[15] Opp.Brief, 14. With the exception of the files from attorneys and the New Jersey bank account records, all the other documents the Plaintiffs claim are relevant are in their control. Even assuming the relevancy of documents not in the Plaintiffs' control in the United States, the Plaintiffs will not be inconven-

---

**15.** Plaintiffs state they are willing to transport documents to the United States at SCI at their expense. Opp.Brief, 14.

ienced by having to litigate this case in France. French law apparently permits French courts to compel the production of documents from parties and nonparties to the action. Supp. Sokol Aff., ¶ 14 (citing New French Code of Civil Procedure, Art. 11). Accordingly, the Plaintiffs would have access in France to the documents they claim are necessary.

The Plaintiffs, however, argue both they and Hirsh will be disadvantaged because France does not have extensive pretrial discovery. Opp.Brief, 17–18. This issue was rejected in *Lony I.* The *Lony I* court stated:

> In a *forum non conveniens* analysis we, like the district court, will not consider the fact that the West German courts typically choose not to call for the same amount of [pretrial] information as would be produced for trial in the United States. We will consider only the relative ease of access to the evidence and the availability of compulsory process to compel witnesses or documents should the court wish to request them.

886 F.2d at 638. Here, the Plaintiffs have done little to show there is a barrier to access to sources of proof for their case if France is the forum.[16]

With respect to access to documents if the United States is the forum, another consideration is translating relevant documents from French into English. The court explained in *Lony I,* "the practical problem of the need to translate documents ... is a relevant concern." 886 F.2d at 639 (citing *Dahl v. United Technologies Corp.,* 632 F.2d 1027, 1031 (3d Cir.1980)); *see also Dimitrios Krimizis v. Panoceanic Navigation Corp.,* No. 83–5667, Slip Op., 1985 WL 3834 (S.D.N.Y.1985). Hirsh maintains that many of the documents regarding her performance are written in French and translating them would be an inconvenience to her. Moving Brief, 14; Hirsh Aff., ¶ 24.

Although both the Mediterranean Golf Contract and the SCI Contract are in English, Hirsh states her documentation of her work on the Vidauban Project as well as the receipts and records legitimizing her expenses are in French. Hirsh Aff., ¶ 24. Hirsh maintains she will incur great expense and inconvenience if she is required to produce and translate these documents for trial in the United States. As previously indicated, the records Hirsh may have pertaining to her efforts to market the Robert Trent Jones name appear to be essential to proving Hirsh's defense. As was the case in *Lony II,* where the dispute could call into evidence documents which are not readily accessible to the party in the forum, the factor weighs in favor of dismissing the action. 935 F.2d at 608.

In this case, the balance of the private interest factors strongly favors dismissal and the result that the Plaintiffs take up these issues in France, where the related French Action is ongoing. The Plaintiffs did not choose their home state forum, and, therefore, can take little advantage of the deference traditionally given to the plaintiff's choice of forum. The key witnesses appear to be those now living in France including those who have knowledge as to Hirsh's conduct, expenses and activities in France to promote the Robert Trent Jones name. Lastly, the Plaintiffs have little, if any, barrier to access to witnesses or documents in France, while Hirsh would undergo great expense to transport her witnesses and documents to the United States, in addition to the translation costs inherent in any such attempt. "If the balance of private interest factors is close to equipoise ... that would not favor dismissal." *Lony I,* 886 F.2d at 635. Here the balance is far from equipoise and strongly favors dismissal.

#### 4. *Public Interests*

As the Third Circuit stated in *Lony I,* the public interest factors relevant to a deter-

---

**16.** To the extent Plaintiffs are burdened because of procedural differences in taking a case to trial in France and the United States, such a burden is beyond the scope of a *forum non conveniens* analysis. An "alternative forum need not offer all remedies and benefits of the Plaintiff's original choice." *Cliffs–Neddrill Turnkey Int'l Oranjestad v. M/T Rich Duke,* 734 F.Supp. 142, 146 (D.Del.1990).

mination of the propriety of transfer include

> the administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home;" the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems and conflicts of laws or the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

886 F.2d at 640 (quoting *Piper*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6). The Third Circuit also stated: "In evaluating the public interest factors the district court must 'consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum.'" *Lacey I*, 862 F.2d at 48 (quoting *Van Cauwenberghe*, 486 U.S. at 528, 108 S.Ct. at 1953).

The primary public interest factors in this dispute are the nexus of the two jurisdictions, local interests in having cases adjudicated at home and the familiarity of the forum court with the applicable law.[17]

### a. Nexus of the Dispute to the Jurisdiction and Local Interest

The locus of the dispute is largely in France. The Complaint alleges breach of contract, breach of fiduciary duty, unjust enrichment and fraud claims. These claims involve allegations of fact regarding Hirsh's expenses, maintenance of records, cooperation with the Plaintiffs and performance of duties. Complaint, ¶¶ 9-10, 15, 25-26. The gravamen of these allegations are the failure to maintain records of performance and expenses as well as the failure to perform the obligations under the Mediterranean Golf Contract.

In this case, Hirsh lived in France, as necessitated by the SCI Contract. Therefore, implicit in the Mediterranean Golf Contract was that Hirsh would promote and market the Robert Trent Jones name in Europe and primarily in France.[18] In fact, the reason for the Mediterranean Golf Contract was the generation of publicity and enthusiasm for the Vidauban Project. Because the Vidauban Project was an expansive project and the first of its kind, the success of the project hinged in part on Hirsh's performance of the Mediterranean Golf Contract. It appears a luxury resort golf complex is a new phenomenon in France. Therefore, the more the Vidauban Project developers were publicized and marketed prior to the project opening, the greater the likelihood of its immediate success. The alleged culpable conduct, therefore, would have occurred in France.

The amount of culpable conduct which allegedly occurred in New Jersey is negligible. The Mediterranean Golf Contract did not implicitly or explicitly call for Hirsh's performance in New Jersey. The only mention of New Jersey in the Mediterranean Golf Contract is with respect to Hirsh's residence. Hirsh does not deny that she maintained a New Jersey residence; she emphasizes, however, that the SCI Contract and Mediterranean Golf Contract required her to perform her duties in France. Moving Brief, 15; Hirsh Aff., ¶ 3. The allegations of fraud and breach of fiduciary duty do, however, arise in part from Hirsh's statements made during meetings in New Jersey with Mediterranean Golf

---

17. Although no demand for a jury has been made by the Plaintiffs, if Hirsh demands a jury, the burden on the jury would also be a factor. This factor would clearly weigh in favor of dismissal. As discussed below, the locus of the dispute is in France. In this forum the jury would be made up of citizens of New Jersey. New Jersey jurors would be burdened by deciding a controversy involving contract performance which was to occur 3000 miles from New Jersey. *See e.g., Dimitrios Krimizis*, No. 83-5667, Slip. Op.

18. At oral argument, the Plaintiffs stated Hirsh's performance under the Mediterranean Golf Contract was to be done throughout the world. The Plaintiffs, however, could not point to language in the Mediterranean Golf Contract or statements in their submissions supporting their position. Plaintiffs' position strains credulity because Hirsh was obligated under the SCI Contract until 1993 and Hirsh could perform her duties as Gerante of SCI only in France.

employees and advisors.[19]

Any meetings Hirsh may have had and any payments Hirsh received in New Jersey were consequences of her performing her contractual obligations in France. The Mediterranean Golf Contract required Hirsh to promote and market the Robert Trent Jones name; the meetings with the Plaintiffs provided a forum at which she could notify the Plaintiffs of her performance. Although the meetings may be relevant to the fraud and breach of fiduciary duty claims, such claims arise out of the breach of contract claims. Therefore, this connection is of less significance than France's connection to the dispute.

The fact that Mediterranean Golf paid Hirsh in dollars has little relevance to the litigation. Payment to Hirsh was Mediterranean Golf's obligation under the Mediterranean Golf Contract; Hirsh's performance, not Mediterranean Golf's performance, is at issue. The amount Hirsh was paid only becomes an issue with respect to the unjust enrichment claim. The unjust enrichment claim, however, is an outgrowth of the underlying breach of contract claim. If Hirsh performed her obligations under the Mediterranean Golf Contract, she was properly compensated for such performance.[20]

Although both New Jersey and France have contacts to the dispute, the conduct occurring in France is more important to and gives rise to this litigation. Therefore, the locus of the dispute is deemed to be in France. As a result of France being the locus of the dispute, France has a significant interest in the litigation. Land is a more limited resource in Europe than in other parts of the world. As a result, a development utilizing more than 1100 hectares of land is a notable use of land. Accordingly, France has a significant interest in the success of the Vidauban Project given the amount of land involved and the land use and zoning approvals awarded to it. In addition, France has an interest in adjudicating disputes involving its citizens. Although the parties dispute whether Hirsh resides in New Jersey or France, she is, nevertheless, a French citizen.

New Jersey does have an interest in providing a forum for its residents with respect to contractual obligations of parties who contract with New Jersey residents. *Koff v. Brighton Pharmaceutical, Inc.*, 709 F.Supp. 520, 528 (D.N.J.1988); *see also Alchemie Int'l, Inc. v. Metal World, Inc.*, 523 F.Supp. 1039, 1052 (D.N.J.1981). Although Hirsh is technically a New Jersey resident, unlike the situation in *Koff* and *Alchemie Int'l*, she is not seeking New Jersey as a forum. Moreover, New Jersey's interest is diminished because the Mediterranean Golf Contract calls for performance outside of New Jersey.

b. Choice-of-Law

The Plaintiffs rely on the New York choice-of-law clause in the Mediterranean Golf Contract and argue that New Jersey would be more familiar with the application of New York law than France. Hirsh argues despite the choice-of-law provision, French law should apply. Moving Brief, 18–19. Hirsh also argues to the extent the claims are for expenses charged to SCI, those claims are governed by French law because her authority was derived from the SCI Contract. *Id.*, 18.

The Supreme Court and the Third Circuit have held that the district court is not required to determine which law the foreign court would apply. *Piper*, 454 U.S. at 251, 102 S.Ct. at 263; *Lacey II*, 932 F.2d at 187 n. 14. The *Piper* court explained: "The doctrine of *forum non conveniens* . . . is designed in part to help courts avoid conducting complex exercises in compara-

---

**19.** These claims include allegations regarding the validity of expenses Hirsh incurred in France. Complaint, ¶ 25.

**20.** The United States, in general, is connected to the dispute because Hirsh attended meetings in Florida, New York and New Jersey and because the Mediterranean Golf Contract contains a New York choice of law clause. The fact that the Plaintiffs are residents of the United States has little connection to the dispute. Although the alleged misrepresentations occurred, in part, in the United States during the meetings Hirsh had with Jones and Mediterranean Golf, as stated, these claims arise out of the breach of contract claims which occurred in France.

tive law." 454 U.S. at 251, 102 S.Ct. at 263. The district court, nevertheless, must "consider the impact of choice-of-law problems on the forum, particularly since the need to apply foreign law points toward dismissal." *Lacey I*, 862 F.2d at 48. The Mediterranean Golf Contract contains a choice-of-law clause which names New York law as the applicable law to contractual disputes. Mediterranean Golf Contract, 8. The initial inquiry, therefore, is whether New Jersey would enforce the choice-of-law clause.

Under New Jersey law,[21] choice-of-law provisions are usually honored as long as fundamental public policies of New Jersey are not offended and the contract bears some relation to the jurisdiction whose law is chosen. *Security Sav. Bank, SLA v. Green Tree Acceptance, Inc.*, 703 F.Supp. 350, 354 (D.N.J.1989) ("New Jersey conflict of laws principles clearly recognize the validity and enforceability of choice-of-law provisions in contracts...."); *see also Green Constr. Co. v. First Indem. of America Ins. Co.*, 735 F.Supp. 1254, 1259 n. 2 (D.N.J.1990), *aff'd*, 935 F.2d 1281 (3d Cir.1991); *Kalman Floor Co. v. Jos. L. Muscarelle, Inc.*, 196 N.J.Super. 16, 21–22, 481 A.2d 553 (App.Div.1984), *aff'd* 98 N.J. 266, 486 A.2d 334 (1985); *Bell v. Merchants & Businessmen's Mut. Ins. Co.*, 241 N.J.Super. 557, 562, 575 A.2d 878 (App. Div.1988), *cert. denied*, 122 N.J. 395, 585 A.2d 395 (1990); *McCabe v. Great Pacific Century Corp.*, 222 N.J.Super. 397, 400, 537 A.2d 303 (App.Div.), *cert. denied*, 121 N.J. 611, 583 A.2d 312 (1990); *Winer Motors, Inc. v. Jaguar Rover Triumph, Inc.*, 208 N.J.Super. 666, 671–73, 506 A.2d 817 (App.Div.1986).

Although, in this case, Hirsh has offered no fundamental New Jersey public policy that would be violated by enforcing the New York choice-of-law clause, the rela-tionship of the Mediterranean Golf Contract to New York is uncertain at best. The Plaintiffs have alleged little, if any, relationship to New York. Neither the Plaintiffs nor the Defendants are residents of New York, nor was performance required in New York. The only apparent relationship to New York is the fact that the negotiations presumably occurred in New York,[22] there was an occasional meeting in New York with Mediterranean Golf employees or advisors and Hirsh occasionally entertained French citizens in New York. The location of the meetings and dinners with clients appears to be fortuitous. The Mediterranean Golf Contract did not provide for meetings to be held in New York; Hirsh also had meetings in Florida and New Jersey as well as in France.

French law will play an important role in this dispute. The SCI Contract is governed by the laws of France. Hirsh Aff., Ex. C at Art. IV, § 4.5. The duties, obligations and authority of Hirsh under the SCI Contract are governed by French law.

> As Gerante of the SCI, Hirsh shall have the general power and authority to manage the affairs of SCI and shall perform the duties normally performed by a Gerante of a company organized and existing under the laws of the republic of France.

*Id.*, at Art. I(a). Accordingly, French law will apply to at least those aspects of the Complaint which deal with the SCI funds and any excessive or improper use of SCI funds by Hirsh. In addition, all issues of Hirsh's conduct concerning her duties, obligations and authority as Gerante of SCI are controlled by French law. Because the Mediterranean Golf Contract was not executed until January 1989, French law will be also important to, at the least, Hirsh's pre-Mediterranean Golf Contract conduct. The litigation will require interpretation of

---

**21.** In a diversity action the federal court is obliged to apply the substantive law of the state in which the forum is located, including that state's choice of law principles. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941), *cert. denied*, 316 U.S. 685, 62 S.Ct. 1284, 86 L.Ed. 1757 (1942); *Lacey II*, 932 F.2d at 187; *Pancza v. Remco Baby, Inc.*, 761 F.Supp. 1164, 1168 (D.N.J.1991);

*Hoffman Equip., Inc. v. Clark Equip., Co.*, 750 F.Supp. 1222, 1229 (D.N.J.1990), *aff'd* 935 F.2d 1281 (3d Cir.1991).

**22.** The negotiations are assumed to have occurred in New York because both parties had New York counsel for the negotiations.

French law which will play a central role regarding Hirsh's duties as the Gerante of SCI and the expenses she charged as a result of performance of her duties, as well as the relationship of the parties.

Without definitively deciding the choice-of-law question, in light of the tangential relationship New York has with the Mediterranean Golf Contract and the fact that French law will have to be applied to some claims, it is not certain that New Jersey would enforce the New York choice-of-law clause. If New Jersey would not enforce the choice-of-law clause, French law appears to be the appropriate law to apply to the entire litigation. As mentioned, the most significant contacts lie in France and France has the greater interest in the dispute.[23] Accordingly, France would be more familiar with applying the law of France.

> The Third Circuit has stated:
> [T]he possibility of an unfavorable change in substantive law should not be given substantial weight in the *forum non conveniens* doctrine inquiry, since "[i]f central emphasis were placed on any one factor, the *forum non conveniens* doctrine would lose much of the very flexibility which makes it so valuable."

*Lacey I*, 862 F.2d at 46 (quoting *Piper*, 454 U.S. at 249–50, 102 S.Ct. at 262–63). Accordingly, any arguments advanced by the Plaintiffs that they will be prejudiced by the application of French law are unwarranted in this context. Indeed, the Plaintiffs have voluntarily gone to France to do business there. By doing so, they have accepted the possibility of being hailed into French courts, even if the laws are less favorable to them than the laws of the United States.

In weighing the public interest factors, they favor dismissal of the action. The locus of the dispute is in France, France has a more significant interest in litigating the dispute, a New Jersey jury would be burdened by having to decide a case having no connection with New Jersey and it is likely that French law will apply despite the New York choice-of-law clause.

### 5. *Weighing the Private and Public Interests*

The doctrine of *forum non conveniens* is "grounded in concern for the costs that must be expended in litigation and the convenience of the parties." *Lony II*, 935 F.2d at 614 (citing *In re Air Crash Disaster New Orleans*, 821 F.2d 1147, 1165 (5th Cir.1987)). In this case, unlike the situation in *Lony II*, the parties are in the initial stages of litigation. Hirsh has not filed an answer and it appears little or no discovery has been done. There has been no activity concerning the merits of this case. See *Id.*, at 613–614. Significantly, however, in the French Action discovery has been completed. The French Action is ready for a decision on the jurisdictional challenge and the merits. Sicard Dec., ¶ 3. Both parties are well entrenched in the proceedings in France. The inconvenience placed on the Plaintiffs to take up this litigation in France would be minimal. Indeed, the attorneys retained for the French Action may be able to save time and expense for the parties given their familiarity with the fundamental aspects of this dispute.

The above analysis reveals that both the private and public interests strongly weigh in favor of dismissing the case under the doctrine of *forum non conveniens*. Indeed, the primary concern of the doctrine is implicated in this case. The Third Circuit has stated:

> [T]he primary danger against which the doctrine guards is the plaintiff's "temptation to resort to a strategy of forcing the trial at a most inconvenient place for an adversary, even at some inconvenience to himself," so that he can "'vex', 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble

---

**23.** If a choice of law clause is not enforced or in the absence of a choice of law clause, New Jersey courts apply the law of the forum with the most significant contacts to the dispute. *State Farm Mut. Auto. Ins. Co. v. Simmons*, 84 N.J. 28, 34–36, 417 A.2d 488 (1980); *McCabe*, 222 N.J.Super. at 399, 537 A.2d 303; *Winer Motors, Inc.*, 208 N.J.Super. at 671–73, 506 A.2d 817.

not necessary to his own right to pursue his remedy."

*Lony II*, 935 F.2d at 615 (quoting *Gulf Oil*, 330 U.S. at 507, 67 S.Ct. at 842).

In this case, the Plaintiffs are not domiciliaries of New Jersey. Hirsh has stated she has resided primarily in France for the past fifteen years and has not been in the United States for over a year. Hirsh Aff., ¶ 3. This forum, therefore, is not the most convenient forum for either Hirsh or the Plaintiffs. The effect of the Plaintiffs' choice of a forum appears to be to oppress Hirsh by inflicting unnecessary expense and trouble.

Hirsh has met her burden by a strong preponderance to show the proposed alternative forum, France, is adequate and significantly more convenient than this forum; accordingly, the motion to dismiss for *forum non conveniens* is granted.

### B. International Comity

Hirsh has moved to dismiss the action on the separate grounds of international comity. Moving Brief, 21–22. Hirsh argues because a judgment will be rendered in the French Action, and the French Action relates substantially to this action, the present action should be dismissed in favor of the French proceedings. *Id.*, 22. For the reasons set forth above, this action is dismissed under the doctrine of *forum non conveniens*. Accordingly, the motion to dismiss on the grounds of international comity is moot.

### Conclusion

For the reasons set forth above, the motion to dismiss for *forum non conveniens* is granted and the motion to dismiss on the ground of international comity is moot.