RODIN PROPERTIES–SHORE MALL, N.V., Plaintiff,

v.

CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC., Cushman & Wakefield, Inc., and Neal Rodin, Defendants.

Neal Rodin, Third–Party Plaintiff,

v.

ABN AMRO Bank, N.V., ABN AMRO Holding, N.V., Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering, N.V., and Centraal Beheer Pensioenverzekering, N.V., Third–Party Defendants.

Neal Rodin, Counterclaim Plaintiff,

v.

Rodin Properties–Shore Mall, N.V., Counterclaim Defendant.

Cushman & Wakefield of Pennsylvania, Inc., and Cushman & Wakefield, Inc., Crossclaim Plaintiffs,

v.

Neal Rodin, Crossclaim Defendant.

Cushman & Wakefield of Pennsylvania, Inc., and Cushman & Wakefield, Inc., Third–Party Plaintiffs,

v.

Shore Mall Associates, L.P., R.K. Realty Two Associates, L.P., Leo Ullman, and Reid & Priest LLP, Third–Party Defendants.

Shore Mall Associates, L.P., Counterclaim Plaintiff,

v.

Cushman & Wakefield of Pennsylvania, Inc., Counterclaim Defendant.

Shore Mall Associates, L.P., Crossclaim Plaintiff,

v.

ABN AMRO Bank, N.V., ABN AMRO Holding, N.V., Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering, N.V., and Centraal Beheer Pensioenverzekering, N.V., Crossclaim Defendants.

Shore Mall Associates, L.P., Rule 14(a) Plaintiff,

v.

Rodin Properties–Shire Mall, N.V., Rule 14(a) Defendant.

No. CIV.A. 95–6541(SSB).

United States District Court, D. New Jersey.

Jan. 25, 1999.

Mark McMenamy, Bressler, Amery & Ross, P.C., Morristown, NJ, and Robert C. Sentner, Nixon, Hargrave, Devans & Doyle LLP, New York City, for Plaintiff Rodin Properties–Shore Mall, N.V.

Thomas D. Ruane, ST. John & Wayne, L.L.C., Newark, NJ, for Defendant Cushman & Wakefield of Pennsylvania, Inc.

Cozen & O'Connor, Newark, NJ, and Michael Minsker, Charlotte, NC, for Defendant Cushman & Wakefield, Inc.

Diana Vondra Carrig, Pepper, Hamilton & Scheetz LLP, Cherryhill, NJ, and Barbara W. Mather, Pepper, Hamilton & Scheetz LLP, Philadelphia, PA, for Defendant Neal Rodin.

Frederick Lee Whitmer, Pitney, Hardin, Kipp & Szuch, Morristown, NJ, for Third–Party Defendants ABN AMBRO Bank, N.V., ABN AMBRO Holding, N.V., Stichting Bedrijfspensioenfonds Voor De

Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering, N.V., Centaal Beheer Pensioenverzekering, N.V.

Barbara Mather, Pepper Hamilton & Scheetz LLP, Philadelphia, Pa, for Third–Party Defendant Shore Mall Associates, L.P.

Mark S. Olinsky, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., Newark, NJ, for Third–Party Defendants Thelen Reid & Priest, LLP and Leo Ullman.

Anthony M. Radice, Morrison & Foerster LLP, New York City, for Third–Party Defendant Thelen Reid & Priest, LLP

Theodore S. Steingut, Dornbush Mensch Mendelstam Shaeffer LLP, New York City, for Third–Party Defendant Leo Ullman.

## MOTION OF THIRD–PARTY DEFENDANTS THELEN REID & PRIEST LLP AND LEO ULLMAN TO DISMISS OR IN THE ALTERNATIVE TO SEVER, THE THIRD–PARTY COMPLAINTS OF DEFENDANTS CUSHMAN & WAKEFIELD OF PENNSYLVANIA, INC. AND CUSHMAN & WAKEFIELD, INC.

## RODIN PROPERTIES–SHORE MALL N.V., AND N.V., SHAREHOLDERS' MOTION TO DISMISS, OR IN THE ALTERNATIVE TO SEVER, NEAL RODIN's COUNTERCLAIM AND THIRD–PARTY COMPLAINT AND SHORE MALL ASSOCIATES' RULE 14 CLAIM AND CROSSCLAIM

## AAB'S MOTION TO DISMISS RODIN'S AMENDED THIRD–PARTY COMPLAINT AND SHORE MALL ASSOCIATES' CROSSCLAIMS

BROTMAN, District Judge.

Presently before the Court are the following motions: (1) motion of Thelen Reid & Priest LLP ("Thelen Reid"), successor to third-party defendant Reid & Priest LLP ("Reid"), and third-party defendant Leo Ullman ("Ullman") to dismiss, or in the alternative to sever, the Third–Party Complaints of defendants Cushman & Wakefield of Pennsylvania, Inc. and Cushman & Wakefield, Inc. (collectively "Cushman & Wakefield"); (2) motion of Rodin Properties–Shore Mall, N.V. ("N.V.") and N.V.'s shareholders, specifically Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering N.V., and Centraal Beheer Pensioenverzekering N.V. (collectively "N.V.'s shareholders"), to dismiss, or in the alternative to sever, the Amended Counterclaim and Amended Third–Party Complaint of defendant Neal Rodin ("Rodin") and the Rule 14 Claim and Crossclaim of third-party defendant Shore Mall Associates ("SMA"); and (3) motion of ABN AMRO Bank N.V. ("ABN Bank") and ABN AMRO Holding N.V. ("ABN Holding") (collectively "AAB") to dismiss, or in the alternative to sever, defendant Rodin's Amended Third–Party Complaint and third-party defendant SMA's Crossclaim.

## I. FACTUAL AND PROCEDURAL HISTORY

This lawsuit concerns a dispute about a real estate venture between a New Jersey limited partnership and a Dutch investment corporation. In 1986, defendant Rodin, third-party defendant Ullman, and others, created SMA, a New Jersey limited partnership, for the purpose of purchasing the Shore Mall shopping center located near Atlantic City, New Jersey. *See* Third Amended Complaint, ¶¶ 5, 8. SMA obtained its initial mortgage loan from Continental Bank. *See id.,* ¶ 8. By 1988, SMA's partners were eager to refinance; Rodin and Ullman solicited Dutch investors for this purpose. *See id.,* ¶ 10, 11.

The interested Dutch investors requested that Cushman & Wakefield appraise the Shore Mall property. *See* SMA's Crossclaim, ¶ 33. On October 31, 1989,

defendant Cushman & Wakefield of Pennsylvania, Inc. ("C & W, Pa.") issued an appraisal report which valued the Shore Mall property at $65.5 million. *See* Rodin's Amended Third–Party Complaint, ¶ 34. AAB had its American affiliate ABN–LaSalle analyze the appraisal; ABN–LaSalle visited and inspected the Shore Mall and examined financial and other documentation regarding the Shore Mall. *See id.,* ¶ 35. In addition, each of the Dutch investors conducted its own due diligence with respect to the Shore Mall property. *See id.,* ¶ 36.

On or about December 12, 1989, a number of Dutch investors incorporated N.V. for the purpose of providing a loan to SMA. *See* SMA's Crossclaim, ¶ 39. On December 27, 1989, N.V., which was listed on the Amsterdam Stock Exchange, made an initial public offering of its shares. Third-party defendant AAB was the underwriter of the offering. *See* Rodin's Amended Third–Party Complaint, ¶ 40. Third-party defendants Stichting Bedreijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering N.V. and Centraal Beheer Pensioenverzekering N.V. (collectively, and along with AAB, the "Dutch Investors") bought approximately 55 percent of N.V.'s shares. *See* SMA's Crossclaim, ¶ 41. Private investors purchased 5 percent of the shares. *See* Rodin's Amended Third–Party Complaint, ¶ 41. The remaining shares, approximately 40 percent, were not sold and were therefore retained by the underwriter AAB. *See id.* Rodin was one of the initial members of N.V.'s Board of Supervisory Directors and also the Chairman of the Board. *See* Third Amended Complaint, ¶ 12. According to Rodin, N.V., through its Board of Supervisory Directors, agreed to provide officers' and directors' liability insurance coverage for members of the Board, including Rodin. *See* Rodin's Amended Third–Party Complaint, ¶ 51.

According to N.V., Ullman and Reid, the law firm in which Ullman was a partner, were N.V.'s United States lawyers. *See* Third Amended Complaint, ¶ 12. In this connection, Ullman and Reid drafted, purportedly on N.V.'s behalf, a Note and a Mortgage ("Loan Documents"). *See· id.,* ¶ 15. The Note was in the sum of $49.125 million with a term beginning in January of 1990 and ending in December of 1999. *See id.,* ¶ 19. It stated that SMA would make interest payments at a rate of 8.5 percent for the first five years, and at 11 percent for the final five years. *See id.* The Note required that SMA make interest payments only to the extent that it has available cash flow. *See id.,* ¶ 22. The Note did not require that SMA take certain precautions or refrain from certain actions to ensure that it had available cash flow to make interest payments. *See id.,* ¶¶ 23, 24, 25, 26. The Mortgage gave N.V. certain rights of control with respect to the Shore Mall, including the right to approve leases in excess of 50,000 square feet and the right to approve the cancellation of leases in certain situations. *See id.,* ¶ 43. The Mortgage also prevented SMA from substantially altering the structures of buildings of the Shore Mall without N.V.'s prior written consent, from creating any assignment, mortgage, security interest, or encumbrance on Shore Mall property without N.V.'s prior written consent unless certain exceptions applied, and from improving the Shore Mall without first reaching an agreement with N.V. about such improvements. *See id.,* ¶¶ 43, 44.

Since the execution of the loan, the Shore Mall's economic performance has not reached the projections provided by C & W, Pa. *See id.,* ¶ 55. There has been insufficient cash flow for SMA to pay interest to N.V. at the agreed-upon interest rates, resulting in the accrual of large amounts of unpaid interest. *See id.,* ¶ 57. At the Note's maturity, all accrued interest will become due. *See id.,* ¶ 58. It appears unlikely that SMA will be able to pay this interest. *See id.* In addition, the value of the Shore Mall, as collateral for the Note,

will be insufficient to satisfy SMA's obligation. *See id.*

In response to the failure of the Shore Mall to generate sufficient cash flow to pay the interest due on the Note and the decline in value of the Shore Mall property, N.V.'s Board of Supervisory Directors retained in March of 1994 IBUS Asset Management B.V., a Dutch company, and its American affiliate, UBS Asset Management (collectively "IBUS/UBS") to assess N.V.'s position and to recommend improvements. *See* Rodin's Amended Third–Party Complaint, ¶ 60. IBUS/UBS recommended that N.V. take control of the Shore Mall. *See id.,* ¶ 61. According to Rodin, N.V. and the Dutch investors thereafter implemented a plan to gain control of the Shore Mall by denying SMA the opportunity to further develop the property, thereby depressing its value and forcing SMA to sell the property to N.V. or to another buyer. *See id.,* ¶ 64. Between 1993 and 1995, in keeping with its plan, N.V. rejected SMA's proposals to improve and expand the Shore Mall. *See id.,* ¶ 66. In September of 1995, Rodin claims that AAB, acting on behalf of the Dutch investors, threatened to sue Rodin and Ullman unless SMA sold the Shore Mall immediately with the proceeds to go entirely to N.V. *See id.,* ¶ 69. When they refused, N.V. removed them from N.V.'s Supervisory Board of Directors. *See id.,* ¶ 70.

On December 28, 1995, N.V. filed its original Complaint in this action asserting a variety of claims, including fraud, breach of fiduciary duty, and breach of contract. On January 30, 1996, N.V. filed an Amended Complaint. On April 9, 1996, Rodin moved to dismiss N.V.'s Amended Complaint. On May 14, 1996, Cushman & Wakefield moved to dismiss N.V.'s Amended Complaint. On January 9, 1997, the Court ordered the parties to submit supplemental briefs regarding certain choice-of-law issues. On March 26, 1997, the Court rejected Rodin's motion to dismiss on forum non conveniens grounds and dismissed N.V.'s Amended Complaint without

prejudice and with leave to replead all counts under Netherlands law, with the exception of N.V.'s contract and piercing the corporate veil counts which were to be replead under New Jersey law.

On April 25, 1997, N.V. filed its Second Amended Complaint alleging under Dutch law (1) onrechtmatige daad against Rodin and C & W, Pa., (2) breach of supervisory duty against Rodin, (3) breach of contract against C & W, Pa., and (4) piercing the corporate veil against C & W, Inc. All three defendants moved to dismiss N.V.'s Second Amended Complaint or, in the alternative, for summary judgment. On June 17, 1998, the Court denied the motions to dismiss in their entirety and ordered N.V. to replead its breach of contract claim under New Jersey law.

On June 30, 1998, N.V. filed a Third Amended Complaint. On July 31, 1998, Rodin filed his Answer to N.V.'s Third Amended Complaint. He also filed a Counterclaim against N.V. and a Third–Party Complaint against the Dutch Investors. On September 14, 1998, Rodin filed an Amended Answer to the Third Amended Complaint, an Amended Third–Party Complaint against the Dutch Investors for contribution, and an Amended Counterclaim against N.V. alleging breach of contract for failure to provide him with officers' and directors' insurance for actions commenced in the United States. On August 7, 1998, Cushman & Wakefield filed Answers and Crossclaims against Rodin for contribution and indemnification. They also filed Third–Party Complaints against SMA, RK Realty Two Associates, L.P., Ullman, and Reid for contribution and indemnification and to join Reid and Ullman as indispensable parties. On September 24, 1998, Rodin filed an Answer and a Counterclaim for indemnification and contribution to the Crossclaims of Cushman & Wakefield. Also on September 24, 1998, SMA filed an Answer to the Third–Party Complaints of Cushman & Wakefield. SMA also filed a Counterclaim against C & W, Pa. for contribution and

indemnification, a Crossclaim against the Dutch Investors for contribution, tortious interference with contractual relationship, and intentional interference with expectation of economic benefit or advantage, and a Rule 14(a) Claim against N.V. for breach of the duty of good faith and breach of fiduciary duties.

In addition to the action presently pending before the Court, two actions arising out of the same events are currently pending before other tribunals. One such action has been filed before the Supreme Court of New York, County of New York. On December 22, 1995—six days before filing suit in this Court—N.V. filed a Complaint in New York state court against Ullman, Rodin, C & W, Pa., C & W, Inc., SMA and Reid. On April 4, 1997, the New York court dismissed N.V.'s claims against Rodin and SMA, finding that it lacked personal jurisdiction over them. Thereafter, N.V. filed an Amended Complaint against Ullman, C & W, Pa., C & W, Inc., and Reid alleging (1) fraud against all four defendants, (2) negligence, negligent misrepresentation, gross negligence, piercing the corporate veil, and onrechtmatige daad against C & W, Pa. and C & W, Inc., (3) breach of fiduciary duty, legal malpractice, negligent misrepresentation, and onrechtmatige daad against Ullman and Reid.

Another action involving the same events at issue in the case before this Court has been filed in the Netherlands. On January 9, 1998, Rodin executed an Assignment of Claims by which he conveyed to SMA all of his claims against N.V. and the Dutch Investors arising out of the financing SMA obtained from N.V. Soon thereafter, SMA filed an action in the Netherlands against the Dutch investors for contribution and indemnification should Rodin or Ullman be held liable to N.V. in either the present action or the New York action. On July 30, 1998, Rodin and SMA entered into an Assignment Agreement which stated (1) that the Assignment of Claims Rodin executed on January 9, 1998 was intended to assign to SMA Rodin's claims against the Dutch Investors in the Netherlands only, not in the United States, and (2) that SMA assigns to Rodin the right to assert in the United States District Court for the District of New Jersey any of its claims against N.V. or the Dutch investors.

On November 30, 1998, N.V. and N.V.'s shareholders filed a motion to dismiss, or in the alternative to sever, Rodin's Counterclaim and Third–Party Complaint and SMA's Rule 14 Claim and Crossclaim. Also on November 30, 1998, AAB filed a motion to dismiss, or in the alternative to sever, Rodin's Third–Party Complaint and SMA's Crossclaim. On December 9, 1998, Reid and Ullman filed a motion to dismiss, or in the alternative to sever, the Third–Party Complaints of C & W, Pa. and C & W, Inc.

## II. *DISCUSSION*

### A. MOTION OF THIRD–PARTY DEFENDANTS THELEN REID AND ULLMAN TO DISMISS, OR IN THE ALTERNATIVE TO SEVER, CUSHMAN & WAKEFIELD'S THIRD–PARTY COMPLAINTS

Thelen Reid[1] and Ullman make four arguments in support of their motion: (1) the Court lacks personal jurisdiction over Thelen Reid and Ullman; (2) the Court should abstain from adjudicating Cushman & Wakefield's third-party claims against Thelen Reid and Ullman; (3) Cushman & Wakefield cannot join Thelen Reid and Ullman as indispensable parties pursuant to Fed.R.Civ.P. 19; and (4) the Court should sever Cushman & Wakefield's third-party claims against Thelen Reid and Ullman in the event that the Court fails to dismiss those claims.

#### 1. Personal Jurisdiction

Pursuant to Federal Rule of Civil Procedure 4(e), federal "district courts

---

1. The Court will hereafter refer to both Thelen Reid and Reid as "Reid."

have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." *Sunbelt Corp. v. Noble, Denton & Associates, Inc.,* 5 F.3d 28, 31 (3d Cir.1993). New Jersey's long arm statute permits the assertion of personal jurisdiction as far as is permitted under the Fourteenth Amendment to the United States Constitution. *See* N.J. Ct. R. 4:4–4; *Carteret Savings Bank, FA v. Shushan,* 954 F.2d 141, 145 (3d Cir.1992). The Fourteenth Amendment permits a state to exercise jurisdiction over an out-of-state defendant only where "the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). It is the burden of the plaintiff to prove that the defendant has purposefully availed himself of the forum state. *See Burke v. Quartey,* 969 F.Supp. 921, 924 (D.N.J.1997).

A plaintiff may rely upon a defendant's specific contacts with the forum state to prove that he has purposefully availed himself of that state. Personal jurisdiction pursuant to such contacts is known as specific jurisdiction:

> To make a finding of specific jurisdiction, a court generally applies two standards, the first mandatory and the second discretionary.... First, a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have "reasonably anticipate[d] being haled into court there." *World–Wide Volkswagen Corporation v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (citations omitted). Second, assuming minimum contacts have been established, a court may inquire whether "the assertion of personal jurisdiction would comport with 'fair play and sub-

stantial justice.' " *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Company v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

*Pennzoil Products Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197, 201 (3d Cir.1998). For personal jurisdiction to comport with "fair play and substantial justice," it must be reasonable to require the defendant to defend the suit in the forum state. *See World–Wide Volkswagen, Corp. v. Woodson,* 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). To determine reasonableness, a court considers the following factors:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering substantive social policies.

*Id.* (internal quotation marks omitted) Only in "rare cases [do the] minimum requirements inherent in the concept of fair play and substantial justice ... defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities." *Asahi Metal Industry Co., Ltd. v. Superior Court of Cal., Solano County,* 480 U.S. 102, 116, 107 S.Ct. 1026, 1034, 94 L.Ed.2d 92 (1987) (internal quotation marks omitted).

■ The Court finds that it may exercise specific jurisdiction over Ullman. Ullman is a partner of SMA, a New Jersey limited partnership, which owns the Shore Mall, a New Jersey property. As such, SMA has benefitted from the privilege of conducting business in New Jersey and from the protection of New Jersey's laws. From Cushman and Wakefield's Third-Party Complaints, it appears that their claims for contribution against Ullman are at least partially related to his position with SMA. These contacts are sufficient to

subject Ullman to this Court's jurisdiction pursuant to Cushman & Wakefield's third-party claims. This Court's exercise of jurisdiction over Ullman comports with notions of fair play and substantial justice. In view of the fact that Ullman is already required to defend a similar action in New York state court, his burden in defending Cushman & Wakefield's third-party action in New Jersey is not great. Furthermore, a complete resolution of this dispute which includes all involved parties is in the best interest of the interstate judicial system as well as all of the individuals and entities involved.

■ The Court also finds that it may exercise specific jurisdiction over Reid. To assist it in performing the loan transaction at issue in this case, Reid hired two New Jersey law firms. In December of 1989, Reid retained the Newark, New Jersey law firm of McCarter & English to review copies of the note and mortgage at issue in this case and to advise Reid regarding the Shore Mall's doing business and usury. *See* Certification of Bryant K. Aaron ("Aaron Certification"), Exh. E. Also in December of 1989, Reid retained the Atlantic City, New Jersey firm of Perskie, Nehmad & Zeltner ("Perskie") to advise Reid regarding the Shore Mall's compliance with construction and fire regulations. *See id.*, Exh. F. To this end, Perskie contacted New Jersey officials and found no outstanding violations against the Shore Mall. *See id.* Reid also asked Perskie to advise it of all state and local government regulations affecting the Shore Mall property. *See id.* Perskie did so by letter to Reid dated January 2, 1990. *See id.* Numerous letters and telephone calls were exchanged between Reid and its New Jersey counsel. *See id.*, Exhs. E, F. These interactions—related as they are to the loan transaction at issue in this case—rise to the level of minimum contacts sufficient to establish personal jurisdiction over Reid. By hiring local counsel, Reid purposefully availed itself of the privilege of conducting activities in New Jersey and invoked the benefits and protections of New Jersey law. The Court finds that its exercise of jurisdiction over Reid comports with notions of fair play and substantial justice for the same reasons that its exercise of jurisdiction over Ullman does.

## 2. Abstention

Pursuant to the Supreme Court's decision in *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483, *reh'g denied,* 426 U.S. 912, 96 S.Ct. 2239, 48 L.Ed.2d 839 (1976), federal district courts may at times abstain from exercising jurisdiction where parallel litigation is proceeding in state court. Federal courts, however, have a "virtually unflagging obligation ... to exercise the jurisdiction given to them." *Id.* at 817, 96 S.Ct. at 1246. Therefore, Colorado River abstention is to be exercised in only the most exceptional of circumstances. *See id.* at 818, 96 S.Ct. at 1246; *Bryant v. N.J. Department of Transportation,* 1 F.Supp.2d 426, 436 (D.N.J.1998) ("Although any form of abstention is the exception rather than the rule, Colorado River abstention is even rarer.") (internal quotation marks omitted).

■ Any inquiry into whether such exceptional circumstances exist must be preceded by a determination that the concurrent state and federal actions are parallel. Such cases are parallel when they involve the same parties and claims. *See Trent v. Dial Medical of Florida, Inc.,* 33 F.3d 217, 223 (3d Cir.1994). The cases need not be identical, but there must be a "substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *In re Chicago Flood Litigation,* 819 F.Supp. 762, 764 (N.D.Ill.1993). In the present case, Cushman & Wakefield do not dispute that their Third–Party Complaints against Reid and Ullman are parallel to the New York state court action. The Court agrees that resolution of the state litigation will dispose of Cushman & Wakefield's claims against these third-party defendants.

Having determined that the state and federal proceedings are parallel, the Court must next determine whether there exist exceptional circumstances justifying abstention. Such circumstances include the following:

(1) Which court first assumed jurisdiction over property involved, if any;

(2) Whether the federal forum is inconvenient;

(3) The desirability of avoiding piecemeal litigation;

(4) The order in which the respective courts obtained jurisdiction;

(5) Whether federal or state law applies; and

(6) Whether the state court proceedings would adequately protect the federal plaintiff's rights.

*Trent*, 33 F.3d at 225. The Court must consider each of these factors; no single factor is determinative. *See Colorado River*, 424 U.S. at 819, 96 S.Ct. at 1247.

■ The Court finds that Colorado River abstention is not justified. As the parties both concede, the first factor is not applicable in the present case. With regard to the second factor, the inconvenience of the federal forum to the New York third-party defendants is minor. This circuit has found that the third factor is satisfied "only when there is evidence of a strong federal policy that all claims should be tried in the state courts." *Ryan v. Johnson*, 115 F.3d 193, 198 (1997). The third-party defendants have not pointed to such a policy, and the Court finds itself hard-pressed to articulate one. With regard to the fourth factor, the Court con-

cedes that the New York action which named Reid and Ullman as original defendants was filed more than one year before Cushman & Wakefield's Third-Party Complaints. Reid and Ullman argue that the fifth factor points to abstention because the only claims that can be made against them involve New York or Dutch law, not federal law. This circuit has made clear, however, that "while the presence of federal issues militates against abstention, the converse cannot be said; abstention cannot be justified merely because a case arises entirely under state law." *Id.* at 199. Finally, Reid and Ullman argue that the sixth factor—whether the state court proceedings would adequately protect the federal plaintiff's rights—weighs in favor of abstention because the state court is an adequacy forum for resolving Reid and Ullman's liability. In the Third Circuit, however, the adequacy of the state forum does not counsel in favor of abstention; it is only the inadequacy of the state forum which may impress a court not to abstain. *See id.* at 200. Based on these factors, the Court finds that the matter presently before it does not involve circumstances exceptional enough to justify Colorado River abstention.

### 3. Fed.R.Civ.P. 19

■ Pursuant to Fed.R.Civ.P. 19(a), a court may join an absentee party as plaintiff or defendant to an action where such joinder is "needed for just adjudication" of the action. 4 Moore's Federal Practice § 19.02[2][c] (3d ed.1998).[2] Joinder is necessary where the failure to join creates any of three potential risks: (1) risk that the court will be unable to accord complete

---

**2.** Fed.R.Civ.P. 19(a) states as follows:
A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or

impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in the proper case, an involuntary plaintiff. If the joined party objects to venue

relief among the parties; (2) risk of harm to the absentee's ability to protect its interest; and (3) risk of harm to the defendant by subjecting it to multiple liability or inconsistent obligations. *See id.* It is never necessary, however, to join a joint tortfeasor as a defendant in an action against other tortfeasors. *See* Fed.R.Civ.P. 19, Advisory Committee Notes, 1966 Amendment ("It should be noted particularly, however, that the description is not at variance with the settled authorities holding that a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."); *Temple v. Synthes Corp., Ltd.,* 498 U.S. 5, 7, 111 S.Ct. 315, 316, 112 L.Ed.2d 263, *reh'g denied,* 498 U.S. 1042, 111 S.Ct. 715, 112 L.Ed.2d 704 (1991) ("It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit."). The reason for this is as follows:

> Inherent in the concept of joint and several liability is the right of a plaintiff to satisfy its whole judgment by execution against any one of the multiple defendants who are liable to him, thereby forcing the [tortfeasor] who has paid the whole [judgment] to protect itself by an action for contribution against the other joint [tortfeasors].

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.,* 11 F.3d 399, 412 (3d Cir. 1993). Under Fed.R.Civ.P. 14(a), a defendant may bring a third-party complaint against any person "not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him." A tortfeasor defendant may implead joint tortfeasors in this manner or await resolution of the action against him and then sue for contribution or indemnification. *See id.*

and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

**3.** The full text of Fed.R.Civ.P. 42(b) states as follows:

The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and econo-

Joint tortfeasors are "[t]hose who act together in committing wrong, or whose acts if independent of each other, unite in causing a single injury." Black's Deluxe Law Dictionary 839 (6th ed.1990). By claiming that Reid and Ullman are liable to them for contribution, Cushman & Wakefield allege that Reid and Ullman are joint tortfeasors who contributed to or caused the injury for which N.V. has sued Cushman & Wakefield. Cushman & Wakefield cannot simultaneously allege that Reid and Ullman are joint tortfeasors and seek their joinder as necessary parties. As a matter of law, joint tortfeasors are not necessary parties. The Court will therefore dismiss Count Four of Cushman & Wakefield's Third–Party Complaint. The Third–Party Complaints Cushman & Wakefield have filed against Reid and Ullman pursuant to Fed.R.Civ.P. 14(a) will afford them adequate protection.

**4. Severance**

Fed.R.Civ.P. 21 permits "[a]ny claim against a party [to] be severed and proceeded with separately." Fed.R.Civ.P. 42(b) permits separate trials "in furtherance of convenience or to avoid prejudice, or when separate trials [are] conducive to expedition and economy."[3] A motion for severance pursuant to Rule 21 is distinct from a motion for separate trial—or bifurcation—pursuant to Rule 42(b) although the two are frequently conflated:

> Separate trials will usually result in one judgment, but severed claims become entirely independent actions to be tried, and judgment entered thereon, independently. Unfortunately, this distinction, clear enough in theory, is often obscured in practice since at times the courts talk of "separate trial" and "severance" interchangeably.

my, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, or issues, always preserving inviolate the right of trial by jury as declared by the Seventh Amendment to the Constitution, or as given by a statute of the United States.

9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil § 2387 (1971); *see also McDaniel v. Anheuser–Busch, Inc.*, 987 F.2d 298, 304 (5th Cir.1993).

 The decision to sever a claim or to try it separately is left to the discretion of the trial court. *See Walsh v. Miehle–Goss–Dexter, Inc.*, 378 F.2d 409, 412 (3d Cir.1967) (Rule 21); *Lis v. Robert Packer Hospital*, 579 F.2d 819, 824 (3d Cir.1978) (Rule 42(b)). With regard to severance decisions, the court is not required to consider anything in particular in reaching its conclusion. With regard to bifurcation decisions, the court must consider whether separate trials would "further convenience or avoid prejudice" or promote judicial economy. *Miller v. N.J. Transit Auth. Rail Operations*, 160 F.R.D. 37, 40 (D.N.J.1995) (quoting *McCrae v. Pittsburgh Corning Corp.*, 97 F.R.D. 490, 492 (E.D.Pa.1983)). Because "a single trial tends to lessen the delay, expense and inconvenience to all parties," the burden rests on the party seeking bifurcation to show that it is proper. *Id.* (quoting *Lowe v. Philadelphia Newspapers, Inc.*, 594 F.Supp. 123, 125 (E.D.Pa.1984)).

 While Reid & Ullman request that the Court sever Cushman & Wakefield's third-party claims against them, these third-party defendants cite to both Rule 21 and Rule 42(b), suggesting that they are not certain whether they seek to have the claims against them severed or simply tried separately from the primary claims in this action. The Court will decline to sever the third-party claims pursuant to Rule 21 because Reid and Ullman have failed to present the Court with any reason to transform the claims into an entirely

independent action with an independent case number and an independent judgment. While the Court finds Reid and Ullman's argument for bifurcation more compelling, it remains unpersuaded at this time to order separate trials. Reid and Ullman argue that failure to bifurcate will result in considerable delay: discovery in the main action has already concluded while discovery with respect to the third-party claims has just begun and will not conclude until the spring of 1999. *See* Reid and Ullman's Brief at 28.[4]

 Courts will order bifurcation where there will be little overlap in testimony and evidence between the two proceedings, where the issues to be decided at trial are complex and the factfinder is likely to become confused, where bifurcation will promote settlement, and where a single trial will cause unnecessary delay. *See United States v. Kramer*, 770 F.Supp. 954, 959 (D.N.J.1991); *Welcker v. Smithkline Beckman*, 746 F.Supp. 576, 583 (E.D.Pa. 1990); *Willemijn Houdstermaatschaapij BV v. Apollo Computer Inc.*, 707 F.Supp. 1429, 1434–35 (D.Del.1989). None of these factors are determinative. To the contrary, "a court must take into account the 'overall equities' of the case in ruling on a motion to bifurcate." *Willemijn Houdstermaatschaapij*, 707 F.Supp. at 1433–34. The Court concedes that a decision to deny Reid and Ullman's bifurcation motion will delay the trial of the main action for some time. The Court also concedes that the issues in this case are moderately complex, more so for their numerosity and their choice-of-law complications than for their novelty; these complexities will have only a slight impact on the triers of fact. This complexity and delay, however, must be balanced against the fact that a bifurcated

---

**4.** Reid and Ullman also argue that bifurcation will not prejudice Cushman & Wakefield for they will be able to pursue their claims against Reid and Ullman in New York state court in the meantime. *See* Reid & Ullman Brief at 28. Finally, Reid and Ullman argue that a decision to deny bifurcation will prejudice these third-party plaintiffs for they will have to defend against two claims in two jurisdictions at the same time, one in this

court and one in New York state court. These arguments erroneously imply that a bifurcation order will automatically stay any action, including discovery, on the third-party claims until the main action is resolved. To the contrary, bifurcated third-party claims continue to proceed to trial just as they otherwise would. The Court therefore finds Reid and Ullman's allegations of prejudice to be unwarranted.

trial would result in duplicative testimony and evidence. In addition, the Court must consider the effect on settlement that bifurcation would have:

> The Court has an interest in promoting settlement not only of the third-party claims but of the entire case. The Court believes that the only way to facilitate such a settlement is to try all claims together. If separate trials are held, with the first being between Plaintiff and Defendants, the Third–Party Defendants will have every incentive to shy away from settlement efforts and to instead adopt a "wait and see" attitude since ... their liability is wholly dependent on the liability of the Defendants/Third–Party Plaintiffs. If, on the other hand, all claims are consolidated in a single proceeding, settlement will be facilitated. With the threat of costly and lengthy litigation of their claims at hand, Third–Party Defendants will more likely be reluctant to adopt a "wait and see" attitude towards settlement and will instead participate actively in settlement efforts.

*United States v. New Castle County*, 116 F.R.D. 19, 28 (D.Del.1987). At this time, then, the Court finds that the overall equities of the situation weigh in favor of denying the third-party defendants' bifurcation motion. The Court will reserve the right to revisit the possibility of bifurcation sua sponte should it determine that the situation has changed.

**B. MOTION OF N.V. AND N.V.'S SHAREHOLDERS TO DISMISS, OR IN THE ALTERNATIVE TO SEVER, RODIN'S COUNTERCLAIM AND THIRD–PARTY COMPLAINT AND SMA'S RULE 14 CLAIM AND CROSSCLAIM AS WELL AS AAB'S MOTION TO DISMISS, OR IN THE ALTERNATIVE TO SEVER, RODIN'S THIRD–PARTY COMPLAINT AND SMA'S CROSSCLAIM**

N.V., N.V.'s shareholders, and AAB make several of the same arguments in support of their motions. These include: (1) that the Court lacks personal jurisdiction over the Dutch Investors; (2) that Rodin lacks standing to make claims against N.V. or the Dutch Investors; (3) that SMA's tortious interference claims against the Dutch Investors should be dismissed for failure to state a claim on which relief may be granted; (4) that the Court should sever Rodin's Counterclaim and Third–Party Complaint and SMA's Rule 14 Claim and Crossclaim if it decides not to dismiss them; and (5) that the Court should dismiss Rodin's and SMA's claims on forum non conveniens grounds if it does not do so for other reasons. N.V. and N.V.'s shareholders also make the following arguments: (1) that SMA's Rule 14 claims against N.V. should be dismissed for failure to state a claim on which relief may be granted; and (2) that SMA's and Rodin's claims for contribution should be dismissed for failure to state a claim on which relief may be granted.

To resolve these motions in their entirety, the Court will be required to apply substantive law. In their briefs, the parties rely solely on New Jersey law. The Court is not certain, however, that it is appropriate to apply New Jersey law to all of the claims made in Rodin's Counterclaim and Third–Party Complaint and SMA's Rule 14 Claim and Crossclaim. Wherever possible the Court will resolve the arguments made in the parties' motions. Where resolution is impossible without addressing choice-of-law issues, the Court will reserve on its decision and instruct the parties to submit to the Court briefs clarifying the choice-of-law issues.

**1. Personal Jurisdiction over the Dutch Investors**

■ The standard governing the exercise of personal jurisdiction is described above. Pursuant to this standard, the Court finds that it may exercise specific personal jurisdiction over the Dutch Inves-

tors: their contacts with New Jersey demonstrate purposeful availment of the privilege of conducting activities within the state. This litigation generally arises out of N.V.'s investment in New Jersey property, namely the Shore Mall. The way in which the Dutch Investors, as N.V.'s shareholders, have managed their investment in this New Jersey property has given rise to SMA's and Rodin's claims against them. Before the Dutch Investors incorporated N.V. for the purpose of investing in the Shore Mall, they or their representatives traveled to New Jersey to visit the property. ABN Bank[5] sent representatives from its American affiliate, ABN–LaSalle, to visit and inspect the Shore Mall in 1988 and 1989. *See* Harvey Cert., Exh. E at 14, 19–20, 55, Exh. F, Exh. G. The other Dutch Investors also sent representatives to New Jersey to visit the Shore Mall prior to N.V.'s incorporation. *See id.*, Exh. I at ¶ 3, 6, Exh. L at ¶ 14, Exh. N at 96, 101–02, 105–07, 109. In addition, all of the Dutch Investors conducted extensive due diligence and negotiated directly with SMA before incorporating N.V. *See id.*, Exh. H at 35–41, 53, Exh. I at ¶ 5–15, Exh. J, Exh. L at ¶ 3–15. Through these activities the Dutch Investors purposefully directed their conduct toward a New Jersey partnership, SMA, and New Jersey property, the Shore Mall, creating sufficient contacts with New Jersey for this Court to exercise jurisdiction over them in a lawsuit arising out of these contacts.

Subjecting the Dutch Investors to the jurisdiction of this Court comports with notions of fair play and substantial justice. The Court finds that litigation in this forum is not overly burdensome to the Dutch Investors, for they are N.V.'s shareholders and N.V. chose this forum initially. New Jersey's interest in obtaining convenient and effective relief is significant because the rights and liabilities of SMA, a New Jersey limited partnership, are dependent upon the resolution of the claims against the Dutch Investors. In addition, the most efficient way to resolve the present dispute is for all of the claims to be heard in a single forum.

### 2. Rodin's Standing

N.V. and the Dutch Investors challenge Rodin's standing to bring a Counterclaim against N.V. and a Third–Party Complaint against the Dutch Investors based on an assignment he executed on January 9, 1998 ("January Assignment"). The January Assignment states as follows:

NEIL RODIN . . . ("Assignor"), in consideration of $10.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, hereby assigns, grants, and conveys, without recourse or warranty of any kind, to SHORE MALL ASSOCIATES ("Assignee") all of his claims and causes of action at law or in equity which have arisen at any time up to the date hereof against any or all of the following entities, arising out of financing obtained by Shore Mall Associates from Rodin Properties—Shore Mall N.V. and related matters:

1. ABN AMRO Bank N.V.

2. Stichting Bedrijfspensioenfonds voor de mataaindustrie

3. Stichting Pensioenfonds Rabobankorganisatie

4. AMEV Levenswerzekering N.V.

5. Centraal Beheer Pensioenverzekering N.V.

6. Rodin Properties Shore Mall N.V.

Harvey Cert., Exh. A. The January Assignment was executed by Rodin in Philadelphia, Pennsylvania. Based on this assignment, SMA commenced an action against the Dutch Investors in the Nether-

---

**5.** In response to AAB's challenge to the Court's personal jurisdiction over ABN Holding, Rodin and SMA dismissed their claims against ABN Holding on November 12, 1998. Therefore, the Court need not consider whether it may exercise personal jurisdiction over ABN Holding.

lands in January of 1998. *See* Wallace Aff., Exh. B. On July 30, 1998, Rodin and SMA executed another assignment agreement ("July Assignment") purporting to clarify the intent of the January Assignment. *See* Harvey Cert., Exh. A. In relevant part, the July Assignment states as follows:

> 1. The Assignment of Claims (the "Rodin Assignment"), dated January 9, 1998, a copy of which is attached hereto, was intended to assign to the [Shore Mall Associates, L.P. (the "Partnership")] the right to assert in The Netherlands Neal Rodin's claims and causes of action against the entities named in the Assignment. It was not intended to assign to the Partnership the right to assert those claims and causes of action in the United States. Thus, the Partnership retains the right to assert such claims and causes of action in legal proceedings in The Netherlands. Notwithstanding the pendency of legal proceedings in The Netherlands in which the Partnership has asserted and continues to assert such claims and causes of action, Rodin has the right to assert such claims and causes of action in the United States, including in the U.S. District Court for the District of New Jersey.

*Id.* N.V. and the Dutch Investors argue that the January Assignment extinguished Rodin's right to bring any claims against N.V. or the Dutch Investors in this Court and that the July Assignment did not resurrect this right. Whether Rodin has standing to assert his claims against N.V. and the Dutch Investors therefore turns on the effect the July Assignment had on the January Assignment, if there was in fact any effect at all.

 An assignment is a type of contract and therefore its validity is governed—at least in part—by the law of contracts.[6] Parties to a contract may sign a subsequent agreement by which they modify the terms of their original contract. A court will enforce the modification so long as there is adequate consideration to support it. *See County of Morris v. Fauver,* 296 N.J.Super. 26, 37, 685 A.2d 1342, 1348 (1996), *aff'd in part, rev'd in part,* 153 N.J. 80, 707 A.2d 958 (1998). Parties to a contract may also sign a subsequent agreement by which they simply clarify the terms of the original contract. A court will enforce the clarification even if there is no additional consideration to support it. *See Middlesex Concrete Products & Excavating Corp. v. Northern States Improvement Co.,* 129 N.J.Eq. 314, 320, 19 A.2d 48, 51 (1941). This is because "[n]o consideration is necessary to support a reformation of a written contract limited to a restatement required to express the true intention of the parties." *Id.* It is the purpose of contract law to give effect to the parties'

---

6. Before proceeding, the Court must determine which state's law governs the validity of the January and July Assignments. A federal district court sitting in diversity applies the forum state's choice of law rules. *See McFarland v. Miller,* 14 F.3d 912, 917 (3d Cir.1994). In New Jersey, "the law of the place of contract ... should be applied unless the dominant and significant relationship of another state to the parties or the underlying issue dictates that this basic rule [should] yield." *Keil v. Nat'l Westminster Bank, Inc.,* 311 N.J.Super. 473, 484–85, 710 A.2d 563, 569 (App.Div.1998) (citations omitted). While it is clear that Rodin executed the January Assignment in Pennsylvania, it is not clear where the parties executed the July Assignment. It appears to have been executed by the parties in two different locations and then exchanged via facsimile. Since Rodin is a Pennsylvania resident and he executed the January Assignment in Pennsylvania, he might have executed the July Assignment in Pennsylvania as well. Because SMA is a New Jersey limited partnership and because Ullman, who executed the July Assignment on SMA's behalf, is a New York resident, the July Assignment might have been executed in either New York or New Jersey. The Court, however, need not determine exactly where each of the assignments was executed because of New Jersey's interest in the issue underlying the assignments—that is, whether Rodin's Counterclaim and Third–Party Complaint may be heard by this Court. Neither Pennsylvania nor New York have as strong an interest in this issue as New Jersey does. Consequently, the Court will employ New Jersey law to determine the effect the July Assignment had on the January Assignment.

intent in entering into a contract. *See Newark Publishers' Association v. Newark Typographical Union No. 103*, 22 N.J. 419, 426, 126 A.2d 348, 352 (1956). Where the parties' true intent is not apparent in the contract's writing, however, a court is not at liberty to construe the contract per the parties' request. *See id.* at 427, 126 A.2d at 353. Consequently, contract law creates an incentive for parties to clarify their intent should they realize that their contract on its face fails to convey it. Where parties to a contract mutually agree to clarify their intent in writing, a court has an obligation to honor that clarification.

Because the July Assignment constitutes a "reformation of a written contract limited to a restatement required to express the true intention of the parties," the Court is bound to treat it as a valid assignment. Pursuant to this assignment, Rodin retains the right to assert claims against N.V. and the Dutch Investors before this Court. Therefore, the Court finds that Rodin has standing to pursue the claims he has asserted in his Counterclaim and Third–Party Complaint.

### 3. Severance

Just as Reid and Ullman requested that the Court sever Cushman & Wakefield's third-party claims against them, N.V. and the Dutch Investors have requested severance of the third-party claims Rodin and SMA have filed. For the same reasons that the Court denied the motion of Reid and Ullman, it will deny the motion of N.V. and the Dutch Investors. The Court will decline to sever the third-party claims pursuant to Fed. R.Civ.P. 21 because N.V. and the Dutch Investors have failed to present the Court with any reason to transform the claims into an entirely independent action with an independent case number and independent judgment. The Court will decline to bifurcate the third-party claims pursuant to Fed.R.Civ.P. 42(b) because the delay created by a single trial and the complexity of that trial are outweighed by the avoidance of duplicative testimony and evidence and the effect that a single trial will have on settlement. As with the bifurcation request made by Reid and Ullman, the Court will reserve the right to revisit the possibility of bifurcation sua sponte should it determine that the equities of the situation have changed.

### 4. Forum Non Conveniens

Pursuant to the doctrine of forum non conveniens, a court may decline to hear a case over which it has jurisdiction where it is in the interest of the litigants and in the interest of justice to do so. *See Mediterranean Golf, Inc. v. Hirsh*, 783 F.Supp. 835, 840 (1991). A determination of forum non conveniens is left to the discretion of the trial judge who must consider the practical inconveniences of litigating in one forum rather than another, the interests of justice, and the impact on judicial administration of maintaining related actions in separate fora. *See id.* The primary concern in making such a determination is whether "trial in the chosen forum would establish oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's inconvenience or when the chosen forum is inappropriate because of considerations affecting the court's own administrative and legal problems." *See id.* (citations omitted)

The party moving for dismissal on forum non conveniens grounds bears the burden of persuasion and must establish a "strong preponderance in favor of dismissal." *Id.* at 840–41(quoting *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44 (3d Cir.1988)). The moving party must prove that the alternative forum is not only adequate but also more convenient than the present one. *See id.* at 841. To this end, the Court must consider both the private interests of the parties to the litigation—including "the plaintiff's choice of forum, the ease of access to sources of proof, availability of compulsory process over unwilling witnesses, the cost of attendance of willing

witnesses, obstacles to a fair trial and the possibility of a jury view of the premises"—and the public interest in the case's adjudication—including "court congestion and other administrative difficulties, placing the burden of jury duty on those having the closest ties to the action, local interests in having cases adjudicated at home and familiarity of the forum court with the applicable law." *Id.* at 840.

As the plaintiff to the main action, N.V. chose this forum to proceed with its case against Cushman & Wakefield and Rodin. When Rodin filed a motion to dismiss the main action on forum non conveniens grounds, N.V. opposed it and the Court found in N.V.'s favor. Now, as a defendant to SMA's Rule 14 Claim and Rodin's Counterclaim, N.V. pleads forum non conveniens as grounds for dismissing these third-party actions. Certainly, N.V. cannot seriously suggest that defending the third-party actions before this Court would prove oppressive and vexatious when it elected this forum in the first place. Nor can the Dutch Investors—as N.V.'s shareholders—make such an allegation.

■■■■ The main reason N.V. and the Dutch Investors argue forum non conveniens is that SMA has filed an action in the Netherlands against the Dutch Investors for contribution and indemnification should Rodin or Ullman be held liable to N.V. either in this action or the New York action. While it may be inconvenient for the Dutch Investors to defend themselves both here and in the Netherlands, such inconvenience does not permit the Court to dismiss the third-party actions against them and N.V. under the doctrine of forum non conveniens. Where parallel actions are pending before a federal court and a foreign tribunal, the federal "court should ordinarily allow both actions to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other absent exceptional circumstances." *Finova Capital Corp. v. Ryan Helicopters U.S.A., Inc.,* No. 98–C–0761, 1998 WL 698900, at *2 (N.D.Ill. Oct.

2, 1998) (applying a Colorado River abstention analysis to determine whether to stay or dismiss a federal action where parallel foreign litigation was pending) (citations omitted). To determine whether exceptional circumstances exist, the court must balance the following factors:

(1) whether the foreign or federal court has assumed jurisdiction over property; (2) the geographical inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law; (6) the adequacy of the foreign court action to protect the rights of the federal plaintiffs; (7) the relative progress of the [foreign] and federal proceedings; (8) the presence or absence of concurrent jurisdiction; and (9) the vexatious or contrived nature of the federal claim.

*Id.* at *3. In the present case, the desirability of avoiding piecemeal litigation and the progress of this matter as a whole before this Court weigh heavily in favor of its retaining jurisdiction. The Court will therefore deny the motion of N.V. and the Dutch Investors to dismiss the third-party claims of SMA and Rodin on forum non conveniens grounds.

### 5. Dismissal for Failure to State a Claim

In considering whether a complaint should be dismissed for failure to state a claim upon which relief can be granted, the Court must consider the facts alleged in the pleading—accepting all of the allegations as true—and determine whether those facts would be sufficient for a factfinder to determine that the plaintiff is entitled to relief. *See ALA v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994). The Court can only make such a determination if it has a clear understanding of the law governing the plaintiff's claim.

N.V. and the Dutch Investors have moved to dismiss SMA's Crossclaim and Rule 14 Claim and Rodin's Third–Party

Complaint for failure to state a claim on which relief may be granted. While the parties assume that New Jersey law governs these third-party claims, it is not clear to the Court whether New Jersey or Dutch law governs. Therefore, the Court will order the parties to submit supplemental briefs on the choice-of-law issues governing these claims. The Court will reserve its decision on whether SMA and Rodin have failed to state a claim until it has determined under which law the claims must be plead.

## III. CONCLUSION

For the foregoing reasons, the Court will grant the motion of Third–Party Defendants Reid and Ullman to dismiss, or in the alternative to sever, Cushman & Wakefield's Third–Party Complaints with regard to Count Four only and will deny the Motion with regard to Counts One through Three. The Court will also deny the motion of N.V. and N.V.'s shareholders to dismiss, or in the alternative to sever, Rodin's Amended Counterclaim and Amended Third–Party Complaint and SMA's Rule 14 Claim and Crossclaim, and AAB's motion to dismiss, or in the alternative to sever, Rodin's Amended Third–Party Complaint and SMA's Crossclaim, on all grounds except those which allege that Rodin and SMA have failed to state a claim on which relief may be granted. The Court will order the parties to submit choice-of-law briefs on those claims raised by SMA's Crossclaim and Rule 14 Claim and Rodin's Amended Third–Party Complaint. The Court will reserve its decision on whether to dismiss the claims raised therein based on failure to state a claim until it has resolved the question of which law to apply to the claims.

## ORDER

**THIS MATTER** having come before the Court on the motion of Thelen Reid & Priest LLP ("Thelen Reid"), successor to third-party defendant Reid & Priest LLP ("Reid"), and third-party defendant Leo Ullman ("Ullman") to dismiss, or in the alternative to sever, the Third–Party Complaints of defendants Cushman & Wakefield of Pennsylvania, Inc. and Cushman & Wakefield, Inc. (collectively "Cushman & Wakefield"); and

**THIS MATTER** having come before the Court on the motion of Rodin Properties–Shore Mall, N.V. ("N.V.") and N.V.'s shareholders, specifically Stichting Bedrijfspensioenfonds Voor De Metaalindustrie, Stichting Pensioenfonds Rabobankorganisatie, Amev Levensverzekering N.V., and Centraal Beheer Pensioenverzekering N.V. (collectively "N.V.'s shareholders"), to dismiss, or in the alternative to sever, the Amended Counterclaim and Amended Third–Party Complaint of defendant Neal Rodin ("Rodin") and the Rule 14 Claim and Crossclaim of third-party defendant Shore Mall Associates ("SMA"); and

**THIS MATTER** having come before the Court on the motion of ABN AMRO Bank N.V. ("ABN Bank") and ABN AMRO Holding N.V. ("ABN Holding") (collectively "AAB") to dismiss, or in the alternative to sever, defendant Rodin's Amended Third–Party Complaint and third-party defendant SMA's Crossclaim; and

The Court having reviewed the submissions of the parties;

For the reasons set forth in the Court's opinion of this date;

**IT IS** on this 25th day of January, 1999 hereby

**ORDERED** that the motion of Thelen Reid and Ullman to dismiss, or in the alternative to sever, the Third–Party Complaints of Cushman & Wakefield is **GRANTED** with regard to Count Four and **DENIED** with regard to Counts One through Three;

**IT IS FURTHER ORDERED** that the motion of N.V. and N.V.'s shareholders to dismiss, or in the alternative to sever, the Amended Counterclaim and Amended Third–Party Complaint of Rodin and the Rule 14 Claim and Crossclaim of SMA and

the motion of AAB to dismiss, or in the alternative to sever, Rodin's Amended Third–Party Complaint and SMA's Cross-claim are **DENIED** on all grounds except those which allege that Rodin and SMA have failed to state a claim on which relief may be granted;

**IT IS FURTHER ORDERED** that N.V., N.V.'s shareholders, AAB, Rodin, and SMA brief as follows the choice-of-law issues arising out of the motions filed by N.V., N.V.'s shareholders, and AAB:

1. On or before February 16, 1999, attorneys for these parties will each deliver to the Court and serve upon counsel thorough briefs on the issue of what choice-of-law rules would govern the Court's choice-of-law analysis and what jurisdiction's law would apply to each of the claims raised in SMA's Crossclaim and Rule 14 Claim and Rodin's Third–Party Complaint. These supplemental briefs may not exceed 30 pages in length.

2. On or before February 26, 1999, attorneys for the parties may deliver to the Court and serve on counsel any responsive brief on these choice-of-law issues. These responsive briefs may not exceed 15 in length;

3. No subsequent submissions in reply will be accepted unless the Court later directs otherwise.

4. No other issues should be briefed.

**IT IS FURTHER ORDERED** that the Court shall **RESERVE** judgment on whether to dismiss the claims raised in SMA's Crossclaim and Rule 14 Claim and Rodin's Third–Party Complaint based on failure to state a claim until it has resolved the question of which law to apply to the claims.